PENNSYLVANIA R. CO. v. JONES.

(Circuit Court of Appeals, Third Circuit. July 7, 1903.)

No. 34.

1. MASTER AND SERVANT—SAFE PLACE TO WORK—QUESTION FOR JURY.

In an action against a railroad company to recover for the death of a brakeman who was killed by the backing of the rear car of a train, on which he was stationed, over the end of a switch which terminated on a trestle, in the nighttime, it was not error to submit to the jury the question whether defendant, in leaving the end of the switch unprotected by a bumper, failed to perform a primary duty, which it owed to its employés, to exercise ordinary care to provide them with a reasonably safe place to work, where the effect of an affirmative finding was properly limited with respect to the assumption of the risk by decedent.

2. SAME—ASSUMPTION OF RISK—KNOWLEDGE OF EXTRAORDINARY DANGER.

The failure of a railroad company to place a bumper or other obstruction at the open end of a switch which terminated on a trestle some feet above the ground subjects train employés to a danger which is not one of the ordinary risks of the employment, and which an employé cannot be said as matter of law to have assumed; and a defense set up by the railroad company to an action for the death of an employé, caused by the backing of a car off the end of the switch in the nighttime, that the danger was so obvious that the deceased, who was shown to have been an experienced man, and to have been in the place some six or seven times, must or should have had knowledge of it, and assumed the risk, or was guilty of contributory negligence, raises an issue of fact for the jury, unless the evidence of actual knowledge is clear, and the burden of proof upon such issue rests on the defendant.

3. SAME—CONTRIBUTORY NEGLIGENCE OF FELLOW SERVANT.

Where a brakeman was killed by the backing of a car in the night from the end of a switch track which was left unprotected through the negligence of the railroad company, the fact that the negligence of fellow servants in handling the train also contributed to the accident does not relieve the railroad company from liability.

Archbald, District Judge, dissenting.

In Error to the Circuit Court of the United States for the Eastern District of Pennsylvania.

John Hampton Barnes, for plaintiff in error.

S. Morris Jones, for defendant in error.

Before ACHESON and GRAY, Circuit Judges, and ARCHBALD, District Judge.

GRAY, Circuit Judge. This was a suit brought by the defendant in error, administratrix of the estate of Philip W. Jones, deceased, against the Pennsylvania Railroad Company, the plaintiff in error. The cause of action was the alleged negligence of the defendant below, in not providing, at a certain point on its road, a sufficiently long side track or switch to accommodate a long train, without danger of running off the end thereof, and in not having provided at the said end of said side track a sufficient bumper or obstruction, by which a train

¶ 2. Assumption of risks incident to employment, see note to Railroad Co. v. Hennessey, 38 C. C. A. 314.

¶ 3. See Master and Servant, vol. 34, Cent. Dig. § 521.

backed thereon might be checked from running off. There is no dispute about the physical situation, as disclosed by the evidence.

The decedent, Philip W. Jones, was a freight brakeman employed on the Amboy Division of the Pennsylvania Railroad Company, the defendant below. On the 1st of December, 1900, he was one of the crew of an extra freight train, consisting of 26 cars, 5 of which were gravel cars loaded with gravel. It was necessary to leave certain cars at Palmyra, and to do so, it became necessary to back the train on to the siding in question, which at its further end ran into a private coal yard, and up on to a trestle about 5½ feet high, used for dumping coal. The whole siding, including that part of it on trestles in the private coal yard, was built by the railroad company, and the latter was occasionally used by it for its own purposes in shunting cars, and as an extension of their siding, when very long trains were necessary to be handled. On the evening of the night of the accident, the proprietors of the coal yard, who closed their place of business at 6 o'clock, were asked by representatives of the defendant company to leave open the large gate which closed down upon the siding, and thus shut off the part inside the coal yard, which was about the length of three cars, in order that it might be used, as it was used, for the shunting of an expected long train of freight cars. Late in the night in question, the extra freight, to which reference has been made, arrived, and the conductor thereof ordered it to be backed on to this siding. The orders were given to the engineer and the two brakemen, and the decedent, as rear brakeman, was standing on the rear end of the rear car, which was a gravel car loaded with gravel, thus facing the direction in which the train was moving. The whole siding, including the trestle work, was shorter than the train being moved on to it. The night was dark, and the train was pushed so far that the rear car went over the trestle, causing the almost instant death of decedent. It does not appear from the evidence that, at the time of the accident, there was anything placed on the tracks near the end of this trestle to obstruct or check a car or train moving thereon. It was in evidence, however, that at times a piece of scantling, 4"x5" or 5"x6", was placed loose across the tracks near the end of the trestle, without being bolted or otherwise secured thereto. The decedent had had more than a year's experience as a freight brakeman, and had been a member of this crew for two or three months. The conductor testified that the crews alternated every week, there being sometimes two and sometimes three shifts, so that each crew would go over this part of the road every second or every third week. This brought the decedent four or six times on this siding, sometimes at night and sometimes in the daytime. This was the only evidence from which an inference of knowledge of the situation or appreciation of the danger on the part of the plaintiff below could have been drawn. No testimony was offered by the defendant, but on the testimony as presented by the plaintiff, the court was asked to give binding instructions for the defendant. This the court refused to do, and submitted the case to the jury, with a charge as to the law, to which no specific exception was taken. The verdict having been rendered in favor of the plaintiff, a motion was submitted for a judgment for defendant, non obstante veredicto, which

motion was denied, and judgment for plaintiff was entered upon the verdict. The assignments of error are two:

(1) That the learned judge erred in declining to affirm the defendant's sixth point of charge, which was as follows: "Under all the evidence in the case, the verdict of the jury must be for the defendant."

(2) The learned judge of the Circuit Court erred in denying defendant's motion to enter judgment for it, non obstante veredicto.

The two questions submitted by the court to the jury were:

First. Whether decedent's death was due to negligence on the part of defendant;

Second. Whether, if it were, it was negligence committed in violation of a duty which the railroad company owed to decedent, in view of the fact that he was an experienced railroad man and had been in this place several times.

These two propositions were elaborated and explained at length to the jury, and no exception is taken to the correctness of the views expressed thereon by the learned trial judge; the contentions here being, that a binding instruction in favor of the defendant should have been given to the jury, and the equivalent one, that a motion for judgment, notwithstanding the verdict, should have been allowed. We think that the two questions above stated were properly submitted to the jury by the trial judge. Clearly defendant below cannot complain that the trial judge should have left to the jury, with proper limitations as to assumption of risk by decedent, the general question, whether defendant had or had not performed the primary duty incumbent upon it, of exercising the care which an ordinarily prudent and careful man would have taken, to make reasonably safe the place in which its employés were to work. In other words, whether it was negligence on the part of defendant to leave the end of a siding, running up upon such a trestle as is described in the evidence, without a bumper or other obstruction at its further end, sufficient to check or prevent the running off thereof of a rear end of a train or car backed thereon. It is true that the application of the rule in regard to the duty of an employer to provide a reasonably safe place in which his employés must work, is to be considered in connection with other rules of law which, according to the facts and circumstances of particular cases, may enter into the determination of liability of the employer, but whether such a reasonably safe place as the law requires has been provided, apart from the qualifying considerations referred to, is logically the first matter to be determined by the jury. In view of the situation disclosed by the evidence in the case before us, we have no hesitation in saying that a jury would be justified in finding that this general and primary duty of the defendant had not been performed, and that, therefore, the danger resulting from leaving unprotected, by bumper or other obstruction, the end of the tracks raised 5½ feet from the ground, on a trestle, was not one of the usual and ordinary risks of the service or employment upon which decedent had entered. The plaintiff in error, however, assuming for the sake of the argument, that this is so, contends that the allowing of the situation to be as it was, was not specific negligence as to the decedent; that is, that it was not the violation of a duty which defendant owed to the decedent, in

view of the fact that he was an experienced railroad man, and had been in this place several times during the two or three months preceding the accident. The learned judge of the court below considered the question in this form, but submitted to the jury the question, whether, from all the evidence, there was ground to infer that the decedent was so fully informed as to the situation, or, from the circumstances of the case, ought to have been so informed, as that his remaining on the train would be an assumption of the hazard of the situation. In thus submitting the question to the jury, we think he was fully justified.

There is no direct evidence as to decedent's knowledge of the situation. All the testimony relating to it, is that of the conductor and two witnesses, one of whom owned, and the other worked in, the coal yard where the trestle was situated. The facts established by this testimony are, that decedent had been employed in this particular service from two to three months, and as the crew to which he belonged alternated with other crews twice or three times a month, he had been in on this siding from four to six times, sometimes during the day and sometimes at night. That across the end of the trestle, there was sometimes a piece of loose scantling, 4"x5" or 5"x6", and that sometimes there was none at all, and on the night in question, there is no testimony that there was anything placed upon the track for the purpose of checking the train. These are the facts, and the only facts, from which an inference was to be drawn, that the decedent was acquainted with the situation and the danger thereof, and that in taking his position on the rear of that train on the night of the accident, he voluntarily encountered the danger and assumed the risk thereof. The facts are meager, but are not disputed, and the inference of such a knowledge on the part of the decedent, as will relieve the defendant below of all liability for what happened, does not so certainly arise from them as to permit a court to say that no other could reasonably be drawn by a jury.

It is true that, in undertaking the work of his employment, the employé assumes all the usual and ordinary risks incident thereto; but, as this court, in Bethlehem Iron Co. v. Weiss, 100 Fed. 45, 40 C. C. A. 274, has said:—

"It is the duty of the master, whether that duty rests upon the terms of the contract of service, express or implied, or upon the rules of law governing the situation, to see to it that the servant is exposed to no extraordinary risks which he could not reasonably anticipate. In other words, that there are no risks attending the business other than such as usually attend business of that general nature, or, if there are such extraordinary risks, that they should be explained to the servant, or be known by or be entirely obvious to him."

In the case before us, there was some evidence tending to show that it was usual on well regulated railroads to place bumpers or obstructions at the end of side tracks or switches, especially upon those whose ends were raised some distance from the ground, and as we have already said, the jury were justified in finding, that there was general negligence in permitting the end of the trestle to be without a bumper or obstruction sufficiently secured to prevent the running off of a car or train. The defense, that the unusual and extraordinary danger arising from this situation was so obvious and well understood

by the decedent, as that he should have been held to have assumed the risk thereof, and thereby relieve the defendant of the liability he would otherwise have incurred to plaintiff, is an affirmative defense, and must be proved to the satisfaction of the jury. What constitute the usual and ordinary risks of employment, which an employé must be taken to have assumed upon entering the service of his employer, are ordinarily for the determination of the court, and this determination is made without regard to the actual knowledge of the employé in this regard. Unusual and extraordinary risks, however, which are not incident to the service, can only be said to have been assumed by the employé, when it is shown that he has full knowledge of their existence, or ought reasonably, in the exercise of ordinary prudence and intelligence, to have had such knowledge. The evidence of such knowledge may be so undisputed and clear, that reasonable men cannot differ as to the fact, and in such case, the court will instruct the jury to find for the defendant; but it must often happen, that the evidence on this point is not so clear and certain as to warrant the court in taking this course, and there would be grave error in taking such a case from the jury. In the absence of such knowledge, actual or imputed, the decedent had a right to rely upon the defendant below having properly constructed and safeguarded the siding and trestle in question, and if defendant were derelict in this respect, it failed in a duty owing to the decedent, and was guilty of juridical negligence to that extent. The facts established by the testimony do not seem to us to be such as that no other inference could be drawn therefrom, than that the danger resulting from this default on the part of defendant was so obvious that decedent must be assumed, as a matter of law, to have had full knowledge thereof, and therefore to have assumed the risk arising therefrom. He had been in upon this siding from four to six times in the course of two or three months. Of course, the jury would be justified in assuming not more than four times, and those occasions were, some of them, during the night and some during the day. It does not appear what the length of the trains were that were backed in upon these occasions, nor how near the end of the trestle the rear car approached, nor whether there was, or was not, always the piece of scantling across the track, or whether or not it had served to check or stop the movement of the cars or train at any time, nor does it appear whether this piece of scantling was actually upon the track at the time the unusually heavy train, on the night of the accident, was pushed back. There is nothing in the record to show that, at any other time, any car or train failed to be stopped in time to avoid an accident, or was ever pushed over the end of the trestle. It is not an unfair assumption, therefore, that the natural impression made upon the decedent, from his experience in this respect, was, that cars could be backed up upon the trestle with safety, and that when, in obedience to his superior, he took his station upon the rear car that night, there was nothing so obviously dangerous in the situation as to threaten immediate injury, or to indicate that he could not safely perform the duty of his station, if the train were backed with the care and caution exercised on former occasions. The danger resulting from the neglect of the defendant below to provide a reasonably safe

place in which the decedent could work (whether obvious or not) had been avoided on the previous occasions on which the defendant might have been exposed thereto, presumably, by the care and caution exercised by the engineer in backing the train on to the trestle. On the night of the accident, however, we cannot say that the jury would be unwarranted in finding no reason why decedent should conjecture a different state of things. If the train was backed off the trestle, through negligence of the engineer (a fact not unreasonable for the jury to find), it was this negligence that exposed decedent to the "unusual and extraordinary" peril of the situation, and not the fault of decedent himself, and although the neglect was that of a co-employé contributing to the accident, the employer is not on that account relieved from liability for his negligence. We do not think that, under the circumstances disclosed by the evidence, decedent was required to know that the train was so long as not to be capable of being accommodated by the whole length of the side track, including that part upon the trestle, or that the engineer would push it so far. There is no evidence, moreover, that decedent was guilty of any want of care after he got upon the train that contributed to the accident which befell him. If there were either contributory negligence on his part or assumption of risk by him, it was in going upon the train at all, and in not refusing to undertake the service at the command or request of the conductor. (The defenses of assumption of risk and contributory negligence sometimes arise from the same facts, though the principles that underlie them are not the same.) Under circumstances like those of the present case, we do not think a court should go so far as to say, that an employé, who is himself in the exercise of due care and caution, must, in order to avoid "contributory negligence" or "assumption of risk" that would, in case of accident relieve his employer from liability, abandon the employment, even if his work could have been performed with safety by the exercise of due care and caution on the part of others, to the want of whose due care and caution the accident is attributable.

The view we take of the case presented by the record, in short, is this: The jury was warranted in finding that the situation maintained by the defendant below at the locus in quo of the accident, was not a reasonably safe one, according to the requirements of the law in that behalf, and as negligence of the master is never one of the risks assumed by the servant, the conclusion that defendant was guilty of negligence, or in other words, had failed in its duty to decedent, would inevitably follow, unless the affirmative defense is established, that decedent was fully informed as to the danger arising from such negligence, or that the same was so obvious that he ought to have been informed thereof; in which case, whether he be said to have assumed the risk, or have waived the negligence of his employer, or to have been guilty of contributory negligence in voluntarily exposing himself to such danger, the defendant is not liable. The determination of this fact was properly left to the jury, and we are not disposed to criticise the conclusion to which the jury in this case came, much less to say that it was one that should have been set aside by the court below. We cannot say, as a matter of law, that plaintiff was either

guilty of contributory negligence, in not abandoning the train and refusing to occupy the station assigned him, or that, by remaining there under the circumstances disclosed by the record, he assumed the risk of the situation created by the plaintiff's default.

The decided cases dealing with the doctrines of assumption of risk and contributory negligence are very numerous. ·We have carefully examined those cited by defendant below, as well as many others, and do not find that the general trend of authority is at variance with the position here taken. The decision in each case must depend so largely on the facts and circumstances peculiar to it, that its ratio decidendi could only be fairly stated by reciting such facts and circumstances, with what would here be embarrassing fullness.

The judgment of the court below is affirmed.

ARCHBALD, District Judge (dissenting). It was expressly decided in Railroad v. Driscoll, 176 Ill. 330, 52 N. E. 921, that a railroad company could not be convicted· of negligence for failure to have a butt post or obstruction at the end of a stub switch by which cars would be prevented from going off, and that it was error to submit to the. jury the question of the safety of the switch without it, or to admit evidence of the use of such posts by other roads. This case is squarely in point, and is based upon the doctrine announced in Tuttle v. Railroad, 122 U. S. 189, 7 Sup. Ct. 1166, 30 L. Ed. 1114, that a railroad company cannot be compelled, according to the varying and uncertain opinions of juries, to adopt any particular contrivance or device in the construction of its road in order to be found in the exercise of ordinary care. See, also, Twitchell v. Grand Trunk Railroad (D. C.) 39 Fed. 419. But, without resting the case upon this, there are other considerations by which the same result is reached. The switch or siding where the accident occurred was not the property· of the defendant company, although they frequently used it, but belonged to one Althouse, the owner of the coal yard into which it ran; and express permission for its use was obtained the day before by the request to have the gate left open. The company was not responsible, therefore, for the general character of the switch, but only for its use at the time in the condition in which it stood if it was not reasonably safe. But the fact is that it was not unsafe for any ordinary and reasonable use, and the accident would not have occurred if proper care had been employed. It was the result, not of running onto the switch, but of running off of it, and for this the company was not responsible. It was directly due to the negligence of the crew in charge of the train, as is plainly shown by the evidence, and the court, in my opinion, should have so declared it. A place or appliance provided by an employer for his employés is safe within the requirement of the law, when, not being inherently dangerous, it is safe if used with due and ordinary care, and for any extra hazard arising out of heedlessness in its use he is not to be held answerable. This is the doctrine that, as it seems to me, is applicable here. There was no negligence on the part of the company in directing the switch to be used, simply because the low trestle at its extremity had an unguarded end. That it had was obvious, if any precaution had been taken to see, and the company were

not called upon to advise the trainmen of anything so manifest. 20 Am. & Eng. Enc. Law (2d Ed.) p. 94. They had a right to assume that they would use their own eyes and judgment. On the other hand, those in the immediate control of the train had no right to back into the obscurity and darkness of the coal yard without taking the precaution to know what there was at the end, nor to rely, as they apparently did, upon being brought up standing by some obstruction sufficiently massive to resist the force of the cars and moving engine. Every stub switch necessarily has an end, which in some cases is guarded and in others is not, as the evidence as well as common observation shows. Some extend into depots, freight houses, or other structures; some into yards; some end on trestles, as here; many stop simply where they happen to. In view of these uncertainties, and as a matter of ordinary prudence, it was the duty of the trainmen in this instance to know where they were going, and what was the condition of the switch at the end. The brakeman—plaintiff's husband—who was killed had a light, and was on the car that went over the trestle. Had the conductor, instead of turning his back and going into the office, or the other brakeman, whose whereabouts does not appear, been stationed so as to receive a signal from decedent when the end was reached, and repeated it to the engineer, the accident would not have occurred; and the failure to observe some such precaution must be regarded as its direct and proximate cause. It is not traceable, except in the remotest degree, to the order of the company to use the switch, for which they were alone responsible, and in which there was no negligence, but to the way in which that order was executed, and the attendant negligence of the decedent or his co-employés, for which the company cannot be justly held.

Entertaining these views, I think the judgment should be reversed.