CHICAGO & E. R. CO. v. PONN.

(Circuit Court of Appeals. Sixth Circuit. November 7, 1911.)

No. 2,103.

1. MASTER AND SERVANT (§ 107*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—UNSAFE PLACE TO WORK.

Plaintiffs' intestate, a boy 17 years old, in the employ of defendant railroad company at its roundhouse, while assisting to turn an engine on the turntable at night, was struck by the pilot of the engine, which projected beyond the edge of the table, and killed. The place was not lighted; and there was no planking around the table, which left the rails of the surrounding tracks projecting above the ground. The table was

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

not large enough to hold the more modern engines, such as the one being turned, without leaving the pilot projecting from three to five feet, and for some reason not shown would not turn readily with such engines, except in one direction, which required those operating it to work with the pilot following them. Plaintiffs' intestate apparently stumbled on a rail, and was caught by the pilot close behind him. *Held*, that such evidence sustained a finding that defendant was negligent in failing to provide a reasonably safe place for the employés to work.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 199–202; Dec. Dig. § 107.*]

2. TRIAL (§ 139*)—MOTION FOR DIRECTED VERDICT—WEIGHT OF EVIDENCE.
In an action against a master for injury to a servant in which defendant relies on the defenses of assumed risk and contributory negligence, the court is not warranted in directing a verdict for defendant if there is any evidence which, if believed by the jury, would negative such claims.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 338–341; Dec. Dig. § 139.*]

3. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.
The only kind of knowledge on the part of an employé which will bar a recovery for an injury on the ground of assumption of the risk is actual knowledge, not only of conditions, but of the risk resulting.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. MASTER AND SERVANT (§ 288*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.
A boy of 17, employed about a railroad roundhouse, who, while assisting others in turning an engine on a turntable by means of a lever, was struck and killed by the pilot of the engine which projected beyond the edge of the table, was not chargeable with assumption of the risk as matter of law, where he had been employed at the work but 10 days, and it was ordinarily not dangerous, and during each night at which time the injury occurred there was but one engine came in of such length as to project so as to subject those operating the table to danger.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068–1088; Dec. Dig. § 288.*]

5. MASTER AND SERVANT (§ 289*)—ACTION FOR INJURY TO SERVANT—QUESTIONS FOR JURY.
If there is uncertainty as to the contributory negligence of a servant injured while performing his work, whether it arises from conflict in the evidence or because different inferences might reasonably be drawn from the facts, the question is one for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

6. MASTER AND SERVANT (§ 270*)—ACTION FOR INJURY TO SERVANT—EVIDENCE.
Where the petition in an action to recover for the injury of an employé while assisting to operate a turntable alleged that, when certain engines were being turned, the table could only be moved in one direction, which defective condition was known to defendant railroad company, evidence that it was a custom of the employés to turn it only in such direction, although it subjected them to greater danger, was admissible in support of both of such allegations.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 270.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**7. Death (§ 67*)—Wrongful Death—Evidence.**

Upon the question of the damages recoverable for the death of an employé, the testimony of one having knowledge of the fact as to his average earnings was admissible.

[Ed. Note.—For other cases, see Death, Cent. Dig. § 88; Dec. Dig. § 67.*]

**8. Appeal and Error (§ 1004*)—Questions Reviewable—Excessive Damages.**

The question of the amount of damages recoverable for the death of plaintiff's intestate, where it has been determined by a jury in a federal court and the trial court has held their verdict not excessive, is not reviewable by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

**9. Appeal and Error (§ 1053*)—Evidence—Precautions Against Recurrence of Injury.**

The admission of evidence in an action to recover damages for the death of a railroad employé, alleged to have been due to a defective turntable, that, after the injury, the table was reconstructed, was not prejudicial error, where the jury were instructed not to consider it on the question of defendant's negligence in using the old table.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4178–4184; Dec. Dig. § 1053.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Action by Mary K. Ponn, administratrix of the estate of Edward J. Ponn, deceased, against the Chicago & Erie Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Action for damages for the alleged wrongful death of the decedent, defendant's employé.

Ponn, a boy 17 years and 8 months old, was in the employ of the Chicago & Erie Railroad Company, at Marion, Ohio, as a laborer at and about its turntable and roundhouse. His employment began 8 or 10 days prior to the accident which caused his death. A part of his duties was to assist in turning the table upon which locomotives were run and turned, to give the direction desired in taking them into the roundhouse after a trip, or from the roundhouse prior to beginning a trip.

His duties began at 6 in the evening and ended at 6 in the morning. The turntable was old, and was installed in a pit which had theretofore been used for another turntable. It consisted of two girders carrying the track upon which the engines were run. The girders rested on a disc at the center turning upon some 16 rollers, operating in a circular channel, the center construction resting upon solid masonry. Underneath the girders at their ends were rollers coming in contact with a circular track in the pit. This was not for the purpose of carrying the weight in turning, but to uphold and support the ends of the girders when an engine was run upon or from the table. The table at the time of the accident was used to turn 35 to 40 engines a day—many of them at night. For 8 or 10 nights prior to the accident the boy Ponn had assisted in the operation of turning engines. When an engine was to be turned, it was run upon the turntable and balanced there, or "spotted," as it was called; the engine being disposed in such a way that the center of equilibrium would be at or near the center of the turntable. With all of the engines in use at that time and turned on this table, excepting two, the diameter of the table was of sufficient length to permit them to be spotted in such a way that no part of the engine projected over the edge of the turntable and the pit in which it operated. On the adjacent ground there were some 10 sets of tracks leading from the turntable to the stalls of the round-

house, or forming the tracks of the main line, as it is called, leading off toward the tracks upon which the engine made its trips. A part of such adjacent ground had no tracks upon it, and there was no board walk or other walk on the land adjacent to the turntable; the ground being level with the tops of the ties, thus leaving the rails their full height above the ground.

Two of the company's engines of recent type were longer than the others. The pilot of a long engine, when spotted, projected certainly as far as three feet over the periphery of the turntable, and it may be as much as five feet on the night when the accident occurred. Near the end of the tracks at each end of the table, there was a handbar or lever fastened to the table in such a way that it reached out above the surface of the rails and inclined outwardly and obliquely therefrom. The table was turned by pushing upon these levers. There were two ways of pushing upon the lever when one of the longer engines was being turned. One was by facing the side of the projecting pilot and pushing, in which case the operators followed the pilot; an operation involving no danger. This is described in the case as the "right" way. The other way of pushing was to get between the lever and the pilot, and push with the pilot following. This is called in the case the "wrong" way. As the pilot came to a point called the nose and the bar proceeded obliquely from the line of the turntable track, there was, when one of the large engines was being turned, a wedge-shaped space between the lever and the pilot. In practice the operators were accustomed to turn the large engines the "wrong" way. The reason for this was that in turning such engines the table turned the "right" way with great difficulty, and sometimes would not turn at all. On one occasion an engine on one of the other tracks was used, by attaching a chain to the engine to be turned, to pull the turntable around by main force. On the night in question, at 2:30 o'clock, when the operators, including Ponn, started to turn the large engine the "right" way, they were unable to do so, and thereupon pushed it the "wrong" way, and, when they came to the first track projecting above the level of the ground, Ponn probably caught his foot on the rail, was struck by the pilot following, and was fatally injured between it and the rail.

Only one long engine was turned each night. There were no fixed lights at or near the turntable. The headlight of the locomotive cast its light forward, and not down. There was evidence tending to show that some, at least, of the men carried lanterns. Just why to a certainty the table turned with difficulty, or not at all, when pushed the "right" way during the operation of turning a large locomotive, does not appear. One of the witnesses laid the fault to a broken roller. That was a mere conjecture. It is very probable, and the testimony warrants the inference, that, when the larger engines were attempted to be balanced or spotted, the center of equilibrium was located some distance beyond the center of the table and toward the pilot end projecting three to five feet over the periphery. Under such circumstances the operation of turning would naturally be attended with difficulty, though why the table turned more easily one way than the other does not appear.

On the night in question Ryan and Landon, employés in similar service with Ponn, one of whom had been engaged in that service for many years, men of mature years, handling the lever at the pilot end, and another employé at the opposite lever, after attempting to push the engine the "right" way and failing, thereupon pushed it the "wrong" way. Ryan was near the end of the lever, Landon next to him, and Ponn next and nearest the engine. No part of the pilot was behind Ryan and Landon, while Ponn had immediately behind him about a foot of the projecting pilot. The distance between the rear of Ponn's feet and legs and edge of the pilot was not shown, but was said to be short. One Berger, who had spotted the engine, came down to assist in the operation by placing his hands on Landon's hips and pushing. The operation of turning was usually performed by four men—three at the pilot end.

Plaintiff charged negligence, in that defendant failed to afford safe machinery and appliances with which Ponn was required to work, and a safe place wherein to work, and in failing to provide a proper and sufficient turntable for the use to which it was put on that night, and for a long time prior thereto; in that the table was unsuitable for the use of locomotives of im-

proved type, such as the two locomotives referred to were; in that the levers and handbars were maintained in dangerous proximity to the tracks on the table, which was known to the defendant; in that no platform or path around the pit in which the turntable stood was provided, so that the surface of the rails would not project above the ground; in that no good, or sufficient, or any, means of lighting up the turntable was provided, and in that no sufficient number of hands was employed or additional arms or handbars were provided for the use of additional men.

For its defense the defendant alleged that Ponn had full knowledge of the conditions surrounding his work, including the fact that the pilot of large locomotives extended beyond the table and of all of the dangers connected with his employment, and, with such knowledge, assumed the risk of injury; and, further, that his injury was due to his own negligence.

The case being submitted to the jury, a verdict of $4,000 for plaintiff was returned.

At the conclusion of the testimony defendant moved for a directed verdict on the ground that plaintiff was shown to have assumed the risk and to have been guilty of contributory negligence. The motion was overruled. Defendant moved for a new trial on the grounds that the motion for a directed verdict should have been granted; that the verdict was contrary to law and against the weight of the evidence; that it was excessive; and that the court erred in admitting certain evidence which is considered in detail in the opinion. The motion was overruled. The assignments of error involve the questions raised on these motions, the acts of the court in refusing to charge the jury in certain respects requested by counsel for defendant, and in charging the jury in certain other respects. All of the matters complained of are disposed of in the opinion.

Frank Lewis (W. O. Johnson and Doyle & Lewis, on the brief), for plaintiff in error.

H. N. Quigley (Mouser & Moloney, on the brief), for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and HOLLISTER, District Judge.

HOLLISTER, District Judge (after stating the facts as above). [1] When it appeared in evidence that the turntable was of insufficient size to accommodate the longer and heavier engines of the kind which once each night was turned on it, that it was more difficult to balance such an engine, that the pilot of such an engine projected about five feet beyond the rim of the table, that turning the table the "right" way with such an engine on it was attended with great difficulty, if it could be turned at all, and that it was the practice, in which the foreman sometimes participated, to turn such an engine the "wrong" way—the jury were justified in reaching the conclusion that the turntable could not properly do the work required of it when such engines were turned, that turning it the "wrong" way necessarily exposed the employés operating the table to some danger from the pilot following them, and hence the appliances for the service required of the decedent were unsuitable, inadequate, and insufficient, of all of which the employer had knowledge. The trial judge was of the same opinion when he in overruling the motion for a new trial held that the verdict, necessarily involving the question of defendant's negligence was not against the weight of the evidence. Whether to grant or deny such a motion is within the discretion of the trial judge and is not

ordinarily reviewable here. Authorities to the point are referred to hereinafter in another connection.

Starting, then, with the established negligence of the defendant, we take up the questions presented to the trial judge by defendant's motion for a directed verdict at the close of all the testimony, and, on the motion for a new trial, whether under the facts the decedent must be held to have assumed the risk of his employment, and (or) to have been guilty of contributory negligence as a matter of law.

[2] Upon considering the motion for a directed verdict the trial judge did not weigh the evidence, but determined whether there was any evidence which, if believed by the jury, would negative the defendant's claim. It has been decided by this court that such a motion must be overruled when the testimony offered by plaintiff, if believed, supports the petition. Big Brushy Coal & Coke Co. v. Williams, 176 Fed. 529. 99 C. C. A. 102, where the authorities are noted at length by Judge Warrington. The same reason must hold good when there is evidence against defendant's claims of assumption of risk and contributory negligence. Therefore, when the trial judge overruled the motion, it was on the theory that there was at least some evidence inconsistent with the defendant's contentions.

In overruling the motion he said:

"It seems to me that is a question of fact whether by virtue of the extent of his employment and his years and experience he did know and appreciate the dangers of it. If he did, he cannot recover, but it strikes me under all the testimony in the case there is a question of fact to present as to whether he did know and appreciate the dangers of the position, so I think the case must go to the jury."

He was not then concerned with the weight of the evidence on these points. When, however, he came to consider the motion for a new trial on its various grounds, including the alleged error in his overruling defendant's motion for a directed verdict, his duties required him to weigh the evidence for the purpose of ascertaining if there was any evidence which would warrant a verdict, and his conclusion, involving a matter of discretion, is not ordinarily reviewable on error. Big Brushy Coal & Coke Co. v. Williams, supra.

These rules would ordinarily preclude any consideration of the evidence on review. But it is defendant's earnest contention that the undisputed evidence shows an assumption by the decedent of the risks of his employment and shows his contributory negligence, and that there is no evidence tending to show the contrary. If defendant is right, then there was no evidence to be weighed and the questions involve considerations purely of law.

The subjects of assumption of risk and contributory negligence are much confused in many of the decisions. They are entirely distinct. One has to do with contract, and the other rests in tort. "Assumption of risk," says Judge Taft, "is a term of the contract of employment, express or implied from the circumstances of the employment, by which the servant agrees that dangers of injury obviously incident to the discharge of the servant's duty shall be at the servant's risk." Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 301, 37 C. C. A. 499, 501 (48 L. R. A. 68).

Judge Sanborn, dealing with the same subjects and the distinction between them, says:

"Assumption of risk is the voluntary contract of an ordinarily prudent servant to take the chances of the known or obvious dangers of his employment, and to relieve his master of liability therefor. Contributory negligence is the casual action or omission of the servant without ordinary care of the consequences." St. Louis Cordage Co. v. Miller, 126 Fed. 495, 502, 61 C. C. A. 477, 484 (63 C. C. A. 551).

Looking for guidance to the latest definitions of these subjects, as given by the Supreme Court, we find from the pen of Mr. Justice Day in Schlemmer v. Buffalo, etc., Ry. Co., 220 U. S. 590, 596, 31 Sup. Ct. 561, 563 (55 L. Ed. 596), the following:

"In the absence of * * * such obvious dangers that no ordinarily prudent person would incur them, an employé is held to assume the risk of the ordinary dangers of the occupation into which he is about to enter, and also those risks and dangers which are known or are so plainly observable that the employé may be presumed to know of them, and, if he continues in the master's employ without objection, he takes upon himself the risk of injury from such defects. Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 67, 68 [24 Sup. Ct. 24, 48 L. Ed. 96], and former cases in this court therein cited. Contributory negligence, on the other hand, is the omission of the employé to use those precautions for his own safety which ordinary prudence requires."

Treating the subject of assumption of risk separately, inquiry is directed to the ordinary dangers of the occupation the boy Ponn entered. The accident happened at 2:30 o'clock in the morning. It does not appear at what hour the large engine was turned each night. It is a fair presumption that it was at the same, or about the same hour, each night. Ordinarily no danger attended the operation of turning engines. It was only when the long heavy engine came along, once each night, that any danger was present. Ponn entered an employment in which he apparently was exposed to no danger at all. When danger arose in the course of his employment, he as a matter of contract assumed the risk if he knew it, or if it was so plainly observable that he would be presumed to know of it. Every one might agree that Ponn knew of the defect in the turntable which required the turning of the long heavy engines the "wrong" way, but it is not so clear that he knew of the risks of the operation, or that they were plainly observable to him. "There is a distinction," says Judge Lurton, "between knowledge of defects * * * and knowledge of the risks resulting from such defects." National Steel Co. v. Hore, 155 Fed. 62, 65, 83 C. C. A. 578, 581.

[3] The only kind of knowledge which on the ground of assumption of risk will bar a recovery is actual knowledge. Tex. & Pac. R. Co. v. Swearingen, 196 U. S. 51, 25 Sup. Ct. 164, 49 L. Ed. 382.

There was no direct evidence on the subject of Ponn's actual knowledge. Hence the given physical facts, the age of the boy, the extent of his experience, the time of night, the infrequency of operation, are all circumstances bearing on the ultimate fact of the extent of his knowledge.

[4] The impression made by the testimony and the inferences to be drawn therefrom impels us to assert with some certainty that the question of the extent of his knowledge is one upon which fair-minded

men might differ. The test of the propriety of submitting the question to the jury is whether reasonable men would differ in the conclusion to be drawn from the evidence. If a verdict against the claim of assumption of risk could reasonably be found by the jury in the honest discharge of their duty, the question must be submitted to them. Pressed Steel Car Co. v. Weisser, 180 Fed. 663, 103 C. C. A. 629. Unless the assumption of risk is so plainly evident as to require the jury to be instructed to find against the plaintiff, the question is properly left to their determination. Choctaw, etc., R. Co. v. McDade, 191 U. S. 64, 68, 69, 24 Sup. Ct. 24, 48 L. Ed. 96; Pennsylvania R. Co. v. Jones, 123 Fed. 753, 59 C. C. A. 87.

In the charge to the jury the trial judge said:

"The deceased as an employé of the railroad company assumed the **risks of** his employment which were known and appreciated by him."

He expressed himself the same way in giving his reasons for overruling the motion for a directed verdict.

The word "appreciated" in this connection does not mean more than actual knowledge. It does not mean less than that. It is frequently used in the decisions as the trial judge used it. In Crawford v. American Steel, etc., Co., 123 Fed. 275, 280, 59 C. C. A. 293, 298, Judge Wallace says:

"He [the employé] is presumed to have known and appreciated all such risks as were open and obvious to ordinary apprehension."

It is said in Mundle v. Hill Mfg. Co., 86 Me. 400, 405, 30 Atl. 16, 18:

"One does not voluntarily assume a risk, within the meaning of the rule that debars a recovery, when he merely knows there is some danger, without appreciating the danger. * * * If he comprehends the nature and the degree of the danger, and voluntarily takes his chance, he must abide the consequences. * * *"

The question was properly submitted to the jury.

There is little difficulty in disposing of the defendant's complaint of the way the trial court dealt with the subject of contributory negligence. Mr. Justice Day's definition is but a restatement of the rule of practically universal adoption in the courts of the United States and in the state courts.

The fact of negligence is not usually to be established by direct proof, but from inferences arising from the facts. McGhee v. Campbell, 101 Fed. 937, 940, 42 C. C. A. 94. Given the facts surrounding Ponn, his age, his experience, or want of it, the time the accident happened, the condition of light or darkness, his knowledge of the physical facts and their relation to each other, the infrequency of the operation, the extent of his appreciation of danger, the fact that men older and of more experience than he were associated with him in the operation, the question arises whether reasonable men, when considering Ponn's conduct, might differ in the inferences to be drawn from the facts proved.

[5] We are not prepared to say that there would be, among such men, an unanimity of opinion that Ponn was guilty of contributory negligence. If there is uncertainty, it is immaterial whether it arises

191 F.—44

from conflict in the testimony, or because different inferences from undisputed facts might be drawn by reasonable men in the honest discharge of their duties. But, if uncertainty (in some of the cases "doubt") exists, the case must go to the jury. Dunlap v. Railroad Co., 130 U. S. 649, 9 Sup. Ct. 647, 32 L. Ed. 1058; Washington, etc., R. R. Co. v. McDade, 135 U. S. 555, 10 Sup. Ct. 1044, 34 L. Ed. 235; Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485; Tex. & Pac. Ry. Co. v. Cox, 145 U. S. 593, 12 Sup. Ct. 905, 36 L. Ed. 829; Northern Pac. R. Co. v. Egeland, 163 U. S. 93, 16 Sup. Ct. 975, 41 L. Ed. 82; McDermott v. Severe, 202 U. S. 601, 604, 26 Sup. Ct. 709, 50 L. Ed. 1162; Steamship Co. v. United States, 205 U. S. 187, 190, 191, 27 Sup. Ct. 480, 51 L. Ed. 764; McGhee v. Campbell, 101 Fed. 937, 42 C. C. A. 94; Hocking v. Hamilton, 122 Fed. 417, 59 C. C. A. 43; Haynie v. Tennessee Coal, etc., Co., 175 Fed. 55, 99 C. C. A. 71; Winters v. B. & O. R. R. Co., 177 Fed. 44, 100 C. C. A. 462.

"It is well settled," says Mr. Justice Brewer, "that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by a jury; and this whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will honestly draw different conclusions from them." Richmond, etc., R. Co. v. Powers, 149 U. S. 43, 45, 13 Sup. Ct. 748, 749 (37 L. Ed. 642).

From these considerations it is clear the trial judge had no choice but to overrule the motion for a directed verdict, both as to assumption of risk and contributory negligence. We are not required to decide whether the verdict was against the weight of the evidence on these subjects or not, for, having found that there was evidence properly submitted to the jury and that the trial judge, after weighing the evidence, and in considering the motion for a new trial, in the exercise of his discretion, overruled it, this court is bound by his decision.

In defendant's behalf numerous cases are cited to the point that when an employé has the choice of two ways of doing his work, one safe and the other dangerous, it is his duty to select the safe way. This could only apply to this case on the theory that as a matter of law the court must say it was Ponn's duty to select in his work the lever opposite the pilot end of the engine. It does not appear that the engine could be moved either the "right" way or the "wrong" way, with only two men at each lever. It does not appear that Ponn had any choice between these two ways, if the engine was to be turned at all.

Aside from this, however, and appreciating the fact that he could not have been injured if he had worked on the opposite lever, the question was still for the jury whether or not under all the facts he conducted himself with due regard for his own safety.

Defendant assigns as error the admission of evidence of a similar accident eight or nine years before. This evidence was admitted as tending to show the existence of a condition known to the defendant and the danger known to it. Defendant does not claim its inadmissi-

bility for these purposes, but because there was no evidence showing that it was the same turntable, and in substantially the same condition. There was evidence tending to show both facts. Aldrich, the man who testified concerning his own injury at that time, said he was hurt while working on and about the turntable, that it was the same turntable, and that "this table was in substantially the same condition" during all of the time he had known it, a period dating before his own accident and up to and including the night Ponn was injured. He reported the accident to defendant's foreman. Counsel was at liberty both to cross-examine and to introduce evidence in contradiction or explanation of Aldrich's testimony, but did not see fit to do so. Defendant has no cause to complain.

[6] The evidence tending to show a custom or practice on the part of the employés, sometimes participated in by the foreman, to turn the engine the "wrong" way, was clearly admissible for the purpose of showing the fact of the defect in the operation of the table, the knowledge of it by defendant, both alleged in detail in the petition, and as reflecting upon the conduct of a boy Ponn's age, when influenced, as the jury might determine, by the example of older and more experienced employés in the same service.

[7] There was no error in permitting the administratrix, Ponn's sister, to testify to the amount of wages he was capable of earning. Her answer was that the amount was about $1.50 to $2 a day, and was the only direct evidence on the subject of damages. The ultimate fact to be found by the jury was what sum of money (within the statutory limit) would compensate the beneficiaries for the loss they had sustained by Ponn's death. His earning power or capacity to earn money was an element bearing directly upon the ultimate fact, because it had probative force. The sister to whom Ponn paid all his wages was certainly qualified to testify as to his earning power. However, counsel for defendant did not cross-examine on the subject, and, although defendant knew better than any one else could possibly know how much it was paying Ponn, it failed to offer any testimony on the subject. Under these circumstances, defendant cannot successfully claim prejudicial error.

[8] The assignment of error that the verdict was excessive does not present a matter to which this court can give consideration. The question of the amount of damages was tried by the jury, and, on motion for a new trial, the verdict was held not to be excessive. This fact is not re-examinable in the appellate courts of the United States. Parsons v. Bedford, 3 Pet. 433, 448, 449, 7 L. Ed. 732; Railroad Co. v. Fraloff, 100 U. S. 24, 31, 25 L. Ed. 531; Ætna Life Ins. Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371; Lincoln v. Power, 151 U. S. 436, 438, 14 Sup. Ct. 387, 38 L. Ed. 224; N. Y., etc., R. R. Co. v. Winter, 143 U. S. 60, 75, 12 Sup. Ct. 356, 36 L. Ed. 71; Shauer v. Alterton, 151 U. S. 607, 626, 14 Sup. Ct. 442, 38 L. Ed. 286; Davidson S. S. Co. v. United States, 205 U. S. 187, 192, 27 Sup. Ct. 480, 51 L. Ed. 764; Herencia v. Guzman, 219 U. S. 44, 45, 31 Sup. Ct. 135, 55 L. Ed. 81; Graves v. Sanders, 125 Fed. 690, 693, 60 C. C. A. 422; Illinois, etc., R. Co. v. Davies, 146 Fed. 247, 248,

76 C. C. A. 613; Mutual, etc., Co. v. Heidel, 161 Fed. 535, 538, 88 C. C. A. 477.

[9] Further error is assigned to the admission of evidence of the substitution after the accident of a new turntable sufficiently long to accommodate all of defendant's engines. Such evidence is not admissible to prove negligence. Columbia, etc., R. R. Co. v. Hawthorne, 144 U. S. 202, 12 Sup. Ct. 591, 36 L. Ed. 405. In that case Mr. Justice Gray quotes the reasons for rejecting such evidence given by Judge Mitchell in Morse v. Minneapolis, etc., Ry. Co., 30 Minn. 465, 468, 16 N. W. 358, 359. It is there said:

"A person may have exercised all the care which the law required, and yet, in the light of his new experience, after an unexpected accident has occurred, and as a measure of extreme caution, he may adopt additional safeguards. The more careful a person is, the more likely he would be to do so, and it would seem unjust that he could not do so without being liable to have such acts construed as an admission of prior negligence. We think such a rule puts an unfair interpretation upon human conduct, and virtually holds out an inducement for continued negligence."

But these reasons were not absent from the mind of the learned judge who tried the case below. It is true he permitted the evidence to go to the jury, but, when he came to charge the jury, he said:

"Evidence has been introduced to the effect that this turntable has been supplanted by a longer table since this accident. That evidence should not be considered by you as an admission by the defendant that it was negligent in the use of this table as applied to this case. It is shown by the undisputed practice that a table fully as long as the engine is easier to operate and more desirable; but the evidence was properly admitted for other purposes, and, as I say, should not be taken as an admission of negligence in the operation of the table at the time the decedent was operating it."

From such of the proceedings below as the record on error now discloses, it does not appear for what other purpose the evidence was offered than in the attempt thereby to show defendant's negligence by such admission as might be implied from the substitution of the new turntable. No injury, however, has resulted to the defendant by the introduction of the testimony for the reason that the jury were expressly instructed not to consider it in its relation to the subject of negligence. Hence the apparent error was not in any way prejudicial to the defendant. Choctaw, etc., R. R. Co. v. McDade, 191 U. S. 64, 69, 24 Sup. Ct. 24, 48 L. Ed. 96.

No error being found, the judgment of the Circuit Court will be affirmed, with costs.