DOLESE BROS. CO. v. KAHL.†

(Circuit Court of Appeals, Eighth Circuit. January 10, 1913.)

No. 3,688.

1. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—DANGEROUS EMPLOYMENT—SAFE PLACE TO WORK—QUESTION FOR JURY.

Where it was part of plaintiff's duty as an employé in defendant's quarry to cut and cap fuses, and he was injured by the explosion of a box of fulminate caps with which he was working, caused by a spark from a blacksmith's anvil located in the same room where plaintiff was required to work, whether defendant provided a reasonably safe place for plaintiff to do such work in requiring that it be done in the same room in which the blacksmith's shop was located was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 229*) — INJURIES TO SERVANT — "CONTRIBUTORY NEGLIGENCE."

"Contributory negligence," as applied to an injury to a servant, is the omission of the servant to use those precautions for his own safety which ordinary prudence requires. It is not synonymous with assumption of risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 674, 683; Dec. Dig. § 229.*

For other definitions, see Words and Phrases, vol. 2, pp. 1540–1547; vol. 8, p. 7617.]

3. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—DANGEROUS PLACE—CONTRIBUTORY NEGLIGENCE.

Plaintiff, a careful workman 25 years of age, at the time of the injury had been employed in defendant's quarry for six months. It was part of his duty to cut and cap fuses for use in defendant's blasting operations, which he was required to do in a shop where blacksmithing operations were also carried on during a part of the day. He first did the work at a bench known as the south bench, but, fearing that the fall of irons hung over this bench might be dangerous, moved his work to the north bench, which was slightly nearer the blacksmith's forge. While at work at this bench, a spark flew from a piece of steel which was being welded into a box of fulminate caps, which immediately exploded, causing the injury. Plaintiff had been working at the north bench for 15 or 16 days prior to the accident with the knowledge and acquiescence of his superior officer, and it appeared that neither knew how far the sparks would fly, or how long they would live. *Held*, that plaintiff was not negligent as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1089–1132; Dec. Dig. § 289.*]

4. MASTER AND SERVANT (§ 286*)—INJURIES TO SERVANT—SAFE PLACE—DUTY OF MASTER—INSTRUCTIONS.

In an action for injuries to a servant, the court charged that the master was required to furnish the servant with a reasonably safe place to work. Other instructions defined the term "safe place to work" as meaning a place so made and surrounded as to be safe when all the safe-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes
† Rehearing denied May 17, 1913.

guards and protection which ordinary experience, prudence, and foresight would suggest have been taken to prevent injury to the employé, while himself exercising reasonable care in the service he undertakes to perform, and that it did not mean a place so made or surrounded as to exclude all possibility of danger, that defendant was required to act as a prudent man, or as one who acts with due care for his own safety and the safety of others under all circumstances within the vicinity, or surrounding the parties as a reasonable man would have acted under like circumstances, and, if defendant so acted, plaintiff could not recover. *Held*, that the charge as a whole was not objectionable as misleading the jury to believe that defendant was bound to furnish a reasonably safe place at all events.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1010–1050; Dec. Dig. § 286.*]

In Error to the Circuit Court of the United States for the Southern District of Iowa; Smith McPherson, Judge.

Action by Edward Kahl against Dolese Brothers Company. Judgment for plaintiff, and defendant brings error. Affirmed.

John M. Cameron and Ralph F. Potter, both of Chicago, Ill. (Ruel B. Cook, of Davenport, Iowa, Jackson, Hurst & Stafford, of Rock Island, Ill., and Custer & Cameron, of Chicago, Ill., on the brief), for plaintiff in error.

M. J. Wade, of Iowa City, Iowa (Frank A. Cooper and F. Vollmer, both of Davenport, Iowa, and Wade, Dutcher & Davis, of Iowa City, Iowa, on the brief), for defendant in error.

Before ADAMS and SMITH, Circuit Judges, and WILLARD, District Judge.

PER CURIAM. This is a suit for damages for personal injuries in which a judgment was entered in favor of Kahl, the plaintiff below, for $20,000.

The defendant below, Dolese Bros. Company, owns and operates a stone quarry at Buffalo, Iowa. The plaintiff at the time his injuries were sustained was 25 years of age and had been employed by defendant in its quarry for six months. The fuse used in the work of blasting at the quarry was about a quarter of an inch in diameter, came in long rolls, and was cut in 3½-foot lengths. The caps were of metal, tubular in shape, about one inch long, closed at one end, and of a diameter to fit over the end of the fuse. They contained fulminate of mercury. After the fuse was cut into the proper length, one end of each piece of fuse was inserted into a cap, which was clamped or "crimped" fast to the fuse. The end of the fuse was then in contact with the fulminate.

During the three months before his injuries were sustained the plaintiff, Kahl, had been engaged in cutting and capping fuses. This work was done in a frame building known as the shop. It was 40 feet long east and west by 30 feet wide north and south. A space 10 feet wide by 22 feet long was partitioned off in the northwest corner for an office and storeroom, leaving 20 feet between the south partition

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

of the storeroom and the south wall of the building. The caps and fuses were kept in this storeroom. Along the south wall of the building was a work bench about 3 feet wide. On the north side was another bench placed against the partition between the main room and the storeroom and running west 10 or 12 feet from the east end of the storeroom. About six feet south of the east end of this north bench was an anvil, and just south of the anvil a forge, both used in such blacksmithing operations as were required about the quarry. This blacksmithing work usually consisted of sharpening and repairing tools and appliances. At the time of the accident certain construction work was under way at the quarry and the forge and anvil were in use on an average of about one-third of each day. Along the south side of the shop over the bench were rows of iron pins 10 inches long inserted in the studding. The plaintiff and certain of his witnesses testified that pieces of iron of various sizes and character were hung upon these pins.

It had been the custom for four years to cut and cap fuses in this room. There was testimony on the part of the plaintiff to show that this had generally been done at the center of the south bench. From the anvil to the nearest point of the bench the distance was about 8 feet on a diagonal line and the bench was about 12 feet long. The plaintiff had done this work there for more than two months. He had become alarmed because iron fell from the pins onto the south bench while he was working, and he was afraid that thereby the caps might be exploded. For this reason about 16 days before the accident he had commenced doing the work referred to on the north bench. He testified that the superintendent saw him working at the north bench several times and was talking to him on the day before while he was putting on the caps at the same place where he was standing when the accident happened. The plaintiff also testified that he could not work at any point on the north bench except the east end by reason of certain sacks of cement being piled on or against the other parts of the bench.

The accident which injured the plaintiff occurred about 7:30 in the morning. He was working capping fuses about three feet from the east end on the north bench with his back to the anvil. He was preparing the fuses to be used in firing shots that evening, a task which would consume a half hour of time. He had the caps beside him on the bench. These caps were purchased and kept in tin boxes each containing 100. The caps were placed in the box open ends up. The box was $2\frac{1}{8}$ inches wide and $2\frac{5}{8}$ inches long. While Kahl was so engaged, the defendant's blacksmith, with the engineer of a steamer, whose eccentric rod, one inch in diameter, had been broken, came into the shop with the rod. They proceeded to heat the pieces of rod in the forge and weld them upon the anvil. This work had nothing to do with the business of the defendant. They had so heated and pounded the iron alternately for 10 minutes or more when sparks from the iron flew over Kahl's head into the open caps upon the bench and an explosion resulted. Kahl was thereby rendered totally blind, his face and hands were disfigured, and he sustained other serious injuries.

The evidence has been stated in the aspect most favorable to the plaintiff.

At the close of all the evidence the defendant requested the court to direct a verdict in its favor. To the ruling of the court denying this motion the defendant excepted, and that is the principal assignment of error in the case.

It is claimed that a verdict for the defendant should have been directed because: (1) There was no evidence of negligence on the part of the defendant, and (2) the evidence conclusively showed that the plaintiff was guilty of contributory negligence.

[1] Upon the question of the defendant's negligence, it appears that the work of capping fuses had been carried on at the south bench a long time, and that this work had been done by the assistant superintendent himself when the anvil and forge were being used. We are now asked to say that this blacksmith shop was so obviously a reasonably safe place in which to do this work that reasonable men could not differ on the question. This we decline to do. Under the evidence in the case, it was clearly for the jury to say whether or not the defendant had exercised ordinary care to provide a reasonably safe place in which the plaintiff could do the work.

[2] The chief question argued upon this assignment of error is that relating to contributory negligence. There is in the case no defense based upon assumption of risk. Assumption of risk and contributory negligence are not the same thing. Schlemmer v. Buffalo, etc., Railway Company, 220 U. S. 590, 596, 31 Sup. Ct. 561, 563 (55 L. Ed. 596). In that case the court said:

"Contributory negligence, on the other hand, is the omission of the employé to use those precautions for his own safety which ordinary prudence requires."

The question therefore is: Was the plaintiff under all the circumstances of the case, guilty of negligence?

[3] The defendant insists that the accident was caused because the plaintiff removed from the south bench to the north bench. The evidence that iron articles fell upon the south bench, and that they might in falling explode the caps, made it a question for the jury as to whether or not that was a dangerous place for him to work. There was also evidence to show that the only place in the shop in which the work could be done was at the place where the plaintiff was working when the explosion occurred. Moreover, the evidence as to distance seems to indicate, or at least the jury might have so found, that the north bench was practically as safe a place as the south bench. There was evidence to show that from the anvil to the nearest point on the south bench the distance was 8 feet; that the work had been done at the center of the south bench which would be about 6 feet farther along on the bench. The distance in a direct line from the anvil would not, therefore, be much more than 5 or 6 feet farther than the distance from the anvil to the point where the plaintiff was standing when he was injured. A blacksmith of 14 years' experience testified that in welding a rod an inch thick sparks would fly about 18 to 22

feet, and that oakum had frequently caught fire from sparks at a distance of from 15 to 20 feet.

Among other circumstances which the jury were entitled to consider, and as to which there was evidence, were these: The plaintiff, according to the defendant's witnesses, was a careful workman. He had been working at the north bench for 15 or 16 days with the knowledge of his superior officer, who had not told him that it was a dangerous place. While he knew that a spark would explode the caps, he did not know how far sparks would fly, or how long they would live. The forge was used principally for sharpening picks and drills. Sparks did not fly when this work was being done. The plaintiff had never seen any sparks fly from that anvil. He had never seen any welding done upon that anvil. When the engineer and the blacksmith came in to weld the broken rod, the plaintiff did not know what they were going to do and did not see what they were doing. While he could do the work at any time he chose, yet the practice had been, according to defendant's testimony, to do this work at the south bench when the anvil and forge were being used. The defendant's superintendent testified that he never paid any attention to sparks, that he did not know how far they would fly, that he did not know whether it was a dangerous place to work or not, that he did not consider it dangerous to work at the south bench, that he never thought there was any danger even when the blacksmith was working, and as a matter of fact he did not know if a spark would fly down there and set the caps off, or not. The assistant superintendent and immediate superior to plaintiff testified that he paid no attention to sparks, that when he was putting on caps he paid no attention to whether the blacksmith was working or not, and that he made no inquiry as to how far sparks would fly.

The blacksmith, a witness for the defendant, testified that he did not pay any attention to the sparks and that he did not realize that there was any danger there. Chicago & E. Ry. Co. v. Ponn, 191 Fed. 682, 689, 691, 112 C. C. A. 228.

The box containing the caps was very small, and the plaintiff was standing between it and the anvil.

Under all these circumstances, it was for the jury to say whether or not the plaintiff was guilty of contributory negligence.

[4] In the course of his charge the court said:

"Now the law is that the master must furnish the servant with a reasonably safe place to work."

The defendant excepted to this portion of the charge, and that exception is the basis of another assignment of error.

But immediately following the above-quoted statement is found the following:

"To fully cover that matter to you gentlemen, not educated to the law, is somewhat difficult; particularly it is somewhat difficult to do it with reasonable terseness and clearness, and at the same time avoid prolixity, or many words.

"The term 'safe place to work' means a place so made and so surrounded and with such appliances or machinery as to be safe, when all the safeguards and protection which ordinary experience, prudence, and foresight would suggest, have been taken to prevent injury to the employé, while the em-

ployé himself is exercising reasonable care in the service in which he undertakes to perform.

"The term 'safe place' does not mean a place so made or surrounded, or with such machinery or appliances, as to exclude all possibility of danger, and the mere fact that an accident happens is not in itself evidence or a showing that the place was unsafe within the meaning of the term just given."

The court also said:

"If the use of explosives,. such as were being worked with at the time of this accident, would require a higher degree of care and attention both from the defendant as to the place furnished for the work, and a higher degree of care and diligence on the part of the employé, Mr. Kahl, in doing the work, each must have acted as a reasonably prudent man under like circumstances would have acted.

"By the term 'prudent man' is meant one who acts with due care for his own safety and the safety of others, under all circumstances within the vicinity or surrounding the parties, as a reasonable man would have acted under like circumstances.

"If the defendant company did not thus act, and if Mr. Kahl did thus.act, the plaintiff will be given a verdict by you gentlemen.

"If each party were negligent, the defendant company in not furnishing a reasonably safe place, and Mr. Kahl in not exercising diligence, there can be no recovery."

When the whole charge is considered, it is apparent that the judge did not say, and the jury could not have understood him as saying, that the defendant was bound in any event to furnish a reasonably safe place to work. The jury must have understood that before a verdict could be returned against the defendant, on that part of the case, it must find that the defendant had not acted as a reasonably prudent man under like circumstances would have acted. The other requests to charge, which are made the bases of assignments of error and the one in regard to the admission of evidence, we have examined; but we find no error in any of the rulings referred to, and none of them merit any special discussion.

The judgment of the court below is affirmed, with costs.