## YAZOO & M. V. R. CO. v. WRIGHT.

(Circuit Court of Appeals, Sixth Circuit. May 6, 1913.)

### No. 2,302.

1. MASTER AND SERVANT (§ 286*) — RAILROADS — NEGLIGENCE — QUESTION FOR JURY.

Where a railroad engineer was killed in a collision between his engine and a car, which in violation of the rules of the company had been left on a side track so near the passing track as not to allow clearance, the company cannot be held free from negligence as matter of law.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. § 286.*]

2. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—"ASSUMPTION OF RISK."

To render the doctrine of "assumption of risk" applicable, the servant must have known, or have been chargeable with knowledge, of the danger which caused his injury, and voluntarily exposed himself to it.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

For other definitions, see Words and Phrases, vol. 1, pp. 589–591; vol. 8, pp. 7584, 7585.]

3. MASTER AND SERVANT (§ 217*)—MASTER'S LIABILITY FOR INJURY TO SERVANT—ASSUMPTION OF RISK.

An engineer was taking his train slowly along a lead track into railroad yards, with cars standing alongside on the left on a switch track leading into his own a short distance ahead. Being unable to determine from his side of the cab, he asked the fireman, whose duty it was under the rules of the company to keep a lookout on the left side, if the stand-

ing cars would clear, and was told they would. Later the fireman said they would not, but it was then too late to avoid collision, in which the engineer was killed. The fireman testified, without contradiction, that the car lacked but a few inches of clearing, and he thought it would clear until they were close to it. The rules of the company required all cars left on side tracks to stand clear of all other tracks. *Held*, that there was no evidence which rendered the doctrine of assumption of risk applicable to the engineer, and that on the trial of an action to recover for his death the court properly refused, not only to direct a verdict for defendant on that ground, but to submit the question to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

4. APPEAL AND ERROR (§ 1064*)—REVIEW—HARMLESS ERROR.

Where an error in instructions, if any, was so slight that it was not excepted to, nor noticed in the motion for new trial, and does not appear to have affected the verdict, it is not sufficient ground for reversal of the judgment.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

● 5. APPEAL AND ERROR (§ 263*)—REVIEW—INSTRUCTIONS—EXCEPTIONS.

An error in instructions will not be considered by the appellate court, unless specifically excepted to or otherwise called to the attention of the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1516–1523, 1525–1532; Dec. Dig. § 263.*]

In Error to the District Court of the United States for the Western District of Tennessee; John E. McCall, Judge.

Action at law by Ada R. Wright, administratrix of D. C. Wright, deceased, against the Yazoo & Mississippi Valley Railroad Company. Judgment for plaintiff, and defendant brings error. Affirmed.

For opinion below, see 197 Fed. 94.

Fitzhugh & Biggs, of Memphis, Tenn. (H. D. Minor and Chas. N. Burch, both of Memphis, Tenn., of counsel), for plaintiff in error.

Barton & Barton, of Memphis, Tenn. (Holmes & Holmes, of Yazoo City, Miss., of counsel), for defendant in error.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

WARRINGTON, Circuit Judge. This action was brought in the court below under the Employer's Liability Act of Congress. Act April 22, 1908, c. 149, 35 Stat. 65 (U. S. Comp. St. Supp. 1911, p. 1322). The plaintiff below is the widow and administratrix of D. C. Wright, who died on May 9, 1912, from injuries received while in the employ of the railroad company as an engineer and operating one of its interstate freight trains. The suit was brought for the benefit of the widow and three surviving children. The deceased received his injuries while entering the railroad yards at Gwin, Miss., when his engine collided with a coal car protruding so far over a side track on which it was standing as not to allow clearance for the engine, then passing along a lead track. The declaration as amended con-

tains eight counts, charging negligence in various forms on the part of the railroad, its officers, agents, and employés. The defenses set up were, in addition to the plea of not guilty, pleas of contributory negligence and assumption of risk. The verdict was for $19,000, which was reduced by the court to $10,000, and the company prosecutes error.

[1] At the close of all the evidence the railroad moved for a directed verdict upon the ground, among others, that no negligence of the defendant had been shown. This motion was overruled, and we think rightly. One of the rules of the company provided that:

"Cars on side tracks, whether in yards or at stations, must stand clear of all other tracks."

One of the evident purposes of this rule was to prevent just such collisions as the one in question. The rule was admittedly violated, and, since this resulted in the death of plaintiff's decedent, the inference of defendant's negligence clearly required submission of the question to the jury; and the question was foreclosed by the verdict and the action of the court below in denying a new trial.

The only other ground of the motion was that the deceased engineer assumed the risk of injury from the obstruction of the coal car. Defendants' counsel pressed this claim throughout the trial of the case; and it has been given paramount attention in this court, both upon brief and in oral argument. The learned trial judge held that assumption of risk was entirely abrogated as to persons operating under the Employer's Liability Act. The contention is that this is so only as respects safety appliances, and that the protruding coal car was not a safety appliance. It is urged for the plaintiff that upon the evidence the question of assumed risk does not arise. If this is sound, it will not be necessary to pass upon any of the rulings of the trial court concerning the limitations placed upon the doctrine by the Employer's Liability Act; for in that event the rulings occasioned no prejudice.

It is important to inquire more closely into the conditions attending the accident. The train in question left the main track some 1,600 feet north of the point of collision and was moved southwardly along the main lead track of the yards until it reached a point something like 200 feet north of the coal car, when, it is claimed, the engineer had the coal car in full view and could determine whether his engine would or would not clear it. The evidence tends to show that the engineer had his train under control. Indeed, the steam was shut off and the train slowed up at or near the point last mentioned. The coal car was standing on the scale track which intersected the main lead track on its south side; that is, on the side opposite to that occupied by the engineer. The car lacked but little (the fireman testified four to ten inches) of clearing the space required for the engine to pass. As the engine approached the coal car, it is reasonably plain from the evidence that the engineer's view of the car gradually diminished until it was cut off by the engine, but that the fireman's view was not obstructed. It was one of the fireman's duties, under the rules, to "keep a careful watch upon the track and instantly

warn the engineman of any obstructions," and the fireman here appears to have performed this duty to the best of his ability. He testified that the engineer asked him— .

"how everything was around there, if it was in the clear, and I looked out to see if it was, and I said 'All right,' and he opened the engine up and went a short ways, and shut off again, and he asked me if some cars was clear over there, * * * and I couldn't tell whether they were clear or not, and we got right on them before I thought they wouldn't clear—lacked only four to eight or ten inches of clearing—"

The witness seeming to hesitate, the court directed him to proceed, when he said, evidently in answer to the second inquiry of the engineer:

"When he asked me if they would clear, I couldn't tell whether they would or not. I thought all the time they would, and was still looking at them all the time. I hollered then that they wouldn't clear, and I said, 'Get off,' and I jumped off of the engine, and the next I saw of him he was caught between the tank and engine—and the cab. The corner of the car slashed the cab on my side. * * *"

The head brakeman testified that he was standing in the gangway of the engine, but the fireman testified that this brakeman was not on the engine at all. However, the brakeman stated that he told the engineer that "it didn't look like them cars was in the clear." The engineer then—

"asked the fireman was they clear, and the fireman was putting in the fire at the time, and when he got through he looks ahead, and he told him they wouldn't clear, and he didn't understand the fireman, and he asked me what he said, and I said he said they wouldn't clear, and the fireman had done jumped off, and he leaves his side to go to the fireman's side to see if they would clear, and I jumped off after he left his side."

Now, however this testimony may be viewed (and these were the only witnesses who appear to have seen the accident), one important feature of it stands out clearly. It is that the engineer and fireman were alert, and that the clearance seemed to these experienced men sufficient (and this is not contradicted by the brakeman) until at or about the time the fireman jumped. Further, the brakeman claims to have jumped almost immediately after the fireman, and no material lapse of time seems to have intervened between their leaving the engine and the engineer receiving his injuries; yet the fireman had previously told the engineer that the clearance was "all right." It is to be remembered, moreover, that the protrusion of the coal car into the space required for the passage of the engine was in a comparative sense not only slight in fact, but, when the fireman was exercising and communicating to the engineer his judgment that the engine would clear, both presumably felt assured that the rule requiring cars on side tracks in the yards to "stand clear of all other tracks" had been complied with; for the requirement necessarily means that such cars shall "stand clear" with respect to the passage of engines and other cars along the adjacent track. It is strenuously urged, however, that this engineer saw the danger and assumed the risk of passing. As it seems to us, this overlooks the obvious force and effect of the evidence. The engineer seems to have been solicitous as

to danger. He sought and employed the fireman, the company's designated agency, to assist him in ascertaining whether or not there was danger. He was assured that there was none until too late to avoid it.

[2, 3] We are convinced that there is no evidence really tending to show that the deceased assumed the risk of the danger that lurked in this protruding coal car. The essential quality of consent on his part is lacking. The vital question is whether he knew or was chargeable with knowledge of the danger and voluntarily exposed himself to it. The fact that the means prescribed for finding out the danger were adopted and failed to reveal it in time to avoid it negatives the whole idea of conscious assumption; and this must not be confused with acts of negligence.[1] Schlemmer v. Buffalo, Rochester, etc., Ry., 205 U. S. 1, 12, 27 Sup. Ct. 407, 51 L. Ed. 681; Smith v. Baker & Sons, App. Cas. (1891) 325, 336, 355; Narramore v. Cleveland, C., C. & St. L. Ry. Co., 96 Fed. 298, 301, 37 C. C. A. 499, 48 L. R. A. 68 (C. C. A. 6th Cir.); Mundle v. Manufacturing Co., 86 Me. 400, 405, 30 Atl. 16; Wagner v. Boston Elevated Railway, 188 Mass. 437, 441, 74 N. E. 919; Railway Co. v. Bancord, 66 Kan. 81, 90, 91, 71 Pac. 253; Chicago & E. R. Co. v. Ponn, 191 Fed. 688, 689, 112 C. C. A. 228 (C. C. A. 6th Cir.); Dorsey v. Phillips & Colby Construction Co., 42 Wis. 583, 598, 599; National Steel Co. v. Hore, 155 Fed. 62, 65, 66, 83 C. C. A. 578 (C. C. A. 6th Cir.); Williams v. Bunker Hill & Sullivan Mining & C. Co., 200 Fed. 211, 216 (C. C. A. 9th Cir.). These decisions afford apt illustrations of the varying conditions under which the principle of assumption of risk is or is not applicable. We do not mean to hold that where the pertinent evidence of a given case is conflicting as respects the employé's knowledge and appreciation of a danger and his consent to expose himself to it, the question can be determined as a matter of law as distinguished from its submission to the jury. What we hold is that the evidence here is not conflicting touching the essential elements of assumption of risk, and consequently that it was not prejudicial error to refuse to submit the matter to the jury, no matter whether the obstruction in the instant case would under another state of facts be open or not to the defense of assumption of risk.

It is further insisted that the evidence in substance shows that the tracks in the railroad yards in question were generally and necessarily more or less filled with cars, and that this was a condition with which the deceased was familiar, and was accompanied by dangers which entered into the risks of his employment. This may well be conceded, but it does not affect the present case. The three coal cars in question, the foremost of which protruded as stated, were not on the main lead track along which the deceased was operating his engine and train. We have seen that one of the rules of the company forbade the placing of a car as this coal car was situated; and the evidence does not tend to show that the company was in the habit of violating this rule, much less that the deceased was bound to anticipate such violation. This

[1] This case is unlike Southern Ry. Co. v. Gadd, 207 Fed. 277, this day decided.

rule entered into the contract of employment of the deceased, and even occasional disobedience of the rule would neither put the employé upon notice nor excuse the company. Cent. R. R. Co. of New Jersey v. Young, 200 Fed. 359, 367, 118 C. C. A. 465 (C. C. A. 3d Cir.), and cases cited.

The next contention is that the trial court erred in refusing to charge that the deceased was guilty of contributory negligence. The claim for the most part is that such negligence could operate only in mitigation of damages, not in bar of the action. The reason urged in support of the claim is that the engineer in the last moments left his side of the engine to go to the opposite side, where he met his injury. It will be remembered that he did this just after the fireman had left the engine, and just as the brakeman claims that he left it. Whether the engineer went to the other side for the purpose of making an examination himself of the possibility of collision, or from fear that the engine might, in case of collision, be turned over upon the side on which he regularly sat, and so injure him if he should jump on that side, is not clear. It is enough to say that the question of his contributory negligence was fully submitted to the jury under proper instructions. The natural inference would be that, if the jury believed he did not exercise a reasonable degree of care, it reduced the damages accordingly. It is true that on the motion for a new trial, upon which the court was required to weigh the evidence (Big Brushy Coal & Coke Co. v. Williams, 176 Fed. 529, 532, 99 C. C. A. 102 [C. C. A. 6th Cir.]), it was found that the engineer was guilty of contributory negligence, and hence the verdict was reduced in the form of a remittitur, which was accepted, in the sum of $9,000, as before stated. It is to be observed, further, that after the close of the general charge one of defendant's special requests was given, which was to the effect that if the intestate failed to exercise ordinary care and caution, and so directly and proximately contributed to the injury, and that the defendant's negligence, if any, only remotely contributed thereto, then the verdict should be for the defendant. We see no error in any of these respects of which the railroad company can rightfully complain.

[4] Objection is made to a special request asked and given for plaintiff after the close of the general charge, which submitted the question whether the fireman was negligent in first assuring the deceased that all was right, and in afterwards failing to notify him of the danger in time to stop his engine; the court stating: "I charge you, if you find that the fireman was negligent in this respect, and his negligence was the proximate cause of the injury, then you must find for the plaintiff." It is urged that there was no allegation in the declaration and no evidence to warrant this charge, and, further, that the court failed to define "proximate cause." We think this falls fairly within the amended declaration; and while we are unable to see wherein the fireman failed in the discharge of his duty (unless possibly in delaying to reveal his doubts until too late), yet in the exception taken at the time not one of these objections was stated or called to the attention of the court. If it be admitted that there was error in any of the respects now claimed, it was slight, and is not perceived to have affected the verdict. We

are not disposed under the circumstances to disturb the judgment on any such ground. Central Union Depot & Ry. Co. v. Mansfield, 169 Fed. 614, 617, 95 C. C. A. 142 (C. C. A. 6th Cir.).

[5] The only remaining assignment of error that need be noticed relates to a portion of the general charge which concerned the measure of damages. In summing up the elements that the jury might consider, the court included "the pain and suffering he [deceased] endured at the time he was hurt." It was error to include such pain and suffering as part of the cause of action that accrued to the widow and children. Mich. Cent. R. R. v. Vreeland, 227 U. S. 59, 68, 33 Sup. Ct. 192, 57 L. Ed. 417; Garrett v. Louisville & N. R. Co., 197 Fed. 715, 720, 117 C. C. A. 109 (C. C. A. 6th Cir.). However, no exception was taken to this portion of the general charge at the time it was given. As Judge Severens said, in Coney Island Co. v. Dennan, 149 Fed. 687, 692, 79 C. C. A. 375, 380:

"Counsel were bound to present their point at the trial, so that the court might consider it, and cannot, under a broad exception not aimed at it, upon subsequent search for error and finding it, bring it forward as a ground for reversing the judgment. It is a well-settled rule that an exception, in order to found a right to review, must be sufficiently distinct to direct the attention of the court to the particular error which is the subject of complaint."

See, also, Block v. Darling, 140 U. S. 234, 238, 11 Sup. Ct. 832, 35 L. Ed. 476; Pennsylvania Co. v. Whitney, 169 Fed. 572, 577, 95 C. C. A. 70 (C. C. A. 6th Cir.).

It is noticeable that the judgment below was for a gross sum, and that no apportionment was made by the jury among the beneficiaries (Railway Co. v. McGinnis, Adm'x, 228 U. S. 173, 33 Sup. Ct. 426, 57 L. Ed. 785, decided by the Supreme Court April 7, 1913); but this apparently did not concern the defendant, for no allusion to it is to be found in the record.

The judgment below must be affirmed, with costs.