# CASES

## ARGUED AND DETERMINED

IN THE

## UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

### CINCINNATI, N. O. & T. P. RY. CO. v. THOMPSON.

(Circuit Court of Appeals, Sixth Circuit. October 12, 1916.)

### No. 2697.

1. MASTER AND SERVANT ⊜⊃288(1)—QUESTIONS FOR COURT—WEIGHT OF EVIDENCE.

   The court cannot as a matter of law declare that a servant assumed a risk, where there is any substantial evidence that he did not.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1068, 1069, 1087, 1088; Dec. Dig. ⊜⊃288(1).]

2. MASTER AND SERVANT ⊜⊃217(1)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

   For a servant to assume the risk, it must appear that he had knowledge of the defective condition out of which the risk arose and appreciated the danger arising therefrom.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 574; Dec. Dig. ⊜⊃217(1).]

3. MASTER AND SERVANT ⊜⊃217(4)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

   Where a brakeman alighting from a moving train stepped on a large piece of slag, turned his foot, and fell under the train, he assumed the risk of injury, though he did not know of the presence of the particular piece of slag, if he knew that there were similar pieces of slag in the yards.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 577; Dec. Dig. ⊜⊃217(4).]

4. MASTER AND SERVANT ⊜⊃217(5)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

   An employé assumes risks attributable to his employer's negligence, where they are plainly observable though he did not know of them.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 578; Dec. Dig. ⊜⊃217(5).]

5. MASTER AND SERVANT ⊜⊃217(5)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

   Though a brakeman, who was injured when he stepped on a large piece of slag in alighting from a moving train, did not know of the presence of pieces of slag of that size, he assumed the risk, where the presence of such slag was plainly observable, for in such case knowledge is imputed to him.

   [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 578; Dec. Dig. ⊜⊃217(5).]

---

⊜⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
236 F.—1

6. MASTER AND SERVANT ⬳217(5)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

A brakeman alighting from a moving train does not assume the risk of injury from the presence of pieces of slag on the roadbed because ordinarily prudent persons would have observed the presence of the slag before alighting.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 578; Dec. Dig. ⬳217(5).]

7. MASTER AND SERVANT ⬳217(1), 234(1)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—ASSUMPTION OF RISK.

The defenses of contributory negligence and of assumption of risk are entirely distinct, and one may exist without another; knowledge of the risk actual or imputed being essential to the existence of assumption of risk, while not to contributory negligence which merely deals with the negligence of the servant.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574, 706; Dec. Dig. ⬳217(1), 234(1).]

8. MASTER AND SERVANT ⬳217(4)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

That a brakeman, injured when he stepped on a large piece of slag in alighting from a moving train, knew that there were smaller pieces of slag on the roadbed, does not as a matter of law establish that he assumed the risk of injury from the presence of such larger pieces, for the danger from them must be deemed substantially greater than the danger from the smaller ones.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 577; Dec. Dig. ⬳217(4).]

9. MASTER AND SERVANT ⬳217(4)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

As the doctrine of assumption of risk necessitates a knowledge of the conditions of the risk which can be gained from pure observation, the brakeman cannot be held to have assumed the risk of injury from the presence of large pieces of slag, on the theory that their presence might have been inferred from the presence of smaller ones, particularly where the railroad company had provided for the removal of large pieces of slag.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 577; Dec. Dig. ⬳217(4).]

10. MASTER AND SERVANT ⬳288(8)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

Whether a brakeman, injured when he stepped on a large piece of slag in alighting from a moving train, assumed the risk of injury therefrom, *held* under the evidence for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1074; Dec. Dig. ⬳288(8).]

11. MASTER AND SERVANT ⬳217(5), 234(3)—INJURIES TO SERVANT—ASSUMPTION OF RISK.

That a brakeman, injured in stepping on a piece of slag as he alighted from a moving train, might have seen the slag before he alighted, does not put in operation the doctrine of assumption of risk, but affects the issue of contributory negligence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 578, 709; Dec. Dig. ⬳217(5), 234(3).]

In Error to the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Action by S. E. Thompson against the Cincinnati, New Orleans &

⬳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Texas Pacific Railway Company, removed from the state court. There was a judgment for plaintiff, and defendant brings error. Affirmed.

H. M. Carr, of Harriman, Tenn., for plaintiff in error.

W. T. Kennerly, of Knoxville, Tenn., for defendant in error.

Before WARRINGTON and DENISON, Circuit Judges, and COCHRAN, District Judge.

COCHRAN, District Judge. This was an action on the federal Employers' Liability Act (Act April 22, 1908, c. 149, 35 Stat. 65 [Comp. St. 1913, §§ 8657–8665]), removed to the lower court from the state court where it was brought. No question as to the right of removal has been made there or here. It resulted in a judgment for plaintiff for $3,000.

The plaintiff was head brakeman on a freight train on defendant's railroad, which, on August 24, 1911, was running from Oakdale, Tenn., to Danville, Ky., and was an experienced employé. In its course the train stopped at Oneida, Tenn., to fill out with other cars. The railroad, at that point, runs north and south, and has two main tracks. North-bound trains take the east, and south-bound the west, track. The freight depot is north of the passenger depot, and a public road crosses the railroad at right angles between them. The former is on the east side, and the latter on the west. The train was north bound and on the east track. It reached Oneida about noon. Plaintiff was riding on the engine. As the train was slowing down, he alighted on the left or west side between the two tracks. It was then running about 6 or 8 miles an hour. The place at which he so alighted was 20 or 30 yards north of the road crossing and almost opposite or even with the freight depot. The caboose was about this place when the train came to a stop. His purpose in so alighting, according to his testimony, was to inspect the under parts of the cars as they passed him. The rules of the company made it a part of his duties to make such an inspection whenever he had a chance. There was evidence tending to show that he could do this, remount, and go back to the head of the train to handle signals whilst the conductor left the caboose and went to the freight depot for waybills and returned. In alighting he jumped or stepped on a loose piece of furnace slag the size of a man's two fists or a cocoanut. It or a similar piece was introduced in evidence as Exhibit No. 1. It "kinder rolled" under him and pitched him head foremost. He fell on all fours, and his right foot, going under the cars, was crushed so that it had to be amputated.

The negligence complained of was permitting this piece of slag to be there. There were three trials. The first resulted in a verdict for the plaintiff for $3,000. This was set aside on the ground that it was against the weight of the evidence. The particular in which it was held to be so was as to plaintiff's purpose in alighting. It was held that the weight of the evidence was that his purpose was to go to a refreshment stand west of the passenger depot and get a bottle of beer, and hence that, when injured, he was not in the line of his duty.

The second was a mistrial. The jury could not agree. And the third resulted in a verdict for $5,000. The plaintiff remitted $2,000 of this to keep the court from setting it aside. This it would otherwise have done on the ground that the plaintiff had been guilty, as a matter of law, of contributory negligence, and the jury had not made sufficient allowance therefor.

The errors assigned and argued are the refusal of the court to give a peremptory instruction to find for the defendant, at the close of all the evidence, and its refusal to give a certain other instruction asked for by it.

The ground upon which it is claimed that defendant was entitled to a peremptory instruction is that, under the evidence, plaintiff had, as a matter of law, assumed the risk of defendant's negligence in relation to the piece of slag which was the cause of his injury. Judge Sanford in stating, in his charge to the jury, what was essential to make out the defense of assumption of risk, said:

"It is not essential * * * that the plaintiff knew of this particular piece of slag; it is sufficient if he knew that there was loose slag there on the ground in sizes and in such condition as to render the use of that ground there for the purpose of alighting from the train a dangerous use. If he knew there was loose slag there, and if he knew that would render the alighting from a train by a brakeman a dangerous thing to do, and if slag of this kind, dangerous slag—if it was dangerous—had been there so long, and he had such means and opportunity of seeing it that a reasonably prudent person would have understood the danger and appreciated the danger resulting from that situation, and he then continued to work for the railroad as a brakeman and used this yard in that way, then it has made out its defense, and there can be no recovery in this case."

If this statement was correct, it would seem, as a matter of law, plaintiff had assumed such risk and defendant was entitled to the peremptory instruction; for plaintiff, in his testimony, admitted that he knew that there were loose pieces of slag where he alighted of sufficient size for it to be dangerous for him to step on one of them. He testified:

"In my service there, going about over the yards, from time to time, prior to the accident, I saw that loose slag was lying there between the tracks. It was perfectly plain for me or anybody else to see, and, in getting off of these trains at Oneida, I, as a rule and practice, at all times, avoided stepping on those loose pieces of slag lying there. No one would step on them on purpose. * * * I didn't know there were any pieces there as large as the one I stepped on. There were small pieces there. I knew it would be dangerous to step on any kind of a piece of slag, even if it was only one-half as large as Exhibit No. 1. I knew it would be dangerous and liable to throw me. They would not be as liable to throw me as this piece, but it would be dangerous just the same. * * * It would be dangerous to step on a piece of slag of any size."

As to the size of the pieces of slag which he knew were there, his testimony was that they were a "good deal smaller" than the exhibit and "anywheres from the size of a hen egg, some smaller and some larger," and, again, that they were of the "size of a hen egg, or something like that, down to most any size, something like a grain of corn or a bird shot."

He further testified that, because of such knowledge on his part, he did not alight immediately from the engine, but stood on the step, within a foot of the ground, looking at the space between the tracks, and that, as he rode along, he saw loose slag and picked out a smooth place to step on, and after he had done so, he "looked up at the fireman for some purpose and passed by this smooth place and then stepped off of the engine without again looking at the ground to see where" he "was going to alight."

His conduct in alighting without looking again was characterized by Judge Sanford as "great contributory negligence," and because of it the remission of the $2,000 was required; and he testified that the piece of slag on which he stepped was plainly observable at least 20 feet before it was reached.

Furthermore, Judge Sanford in his charge to the jury expressed the opinion that as a matter of fact plaintiff had assumed the risk, and this seemingly even though the law required that, in order to this, plaintiff must have known the exact condition of the yard. He said:

"Speaking a moment about the facts in this case, it is very hard for me to see that this man was not getting down to get that beer. It is hard for me to understand why he should have gotten down at this particular place unless he was getting down to get beer; and it looks to me, as a question of fact, as though the condition of that yard was known to him, and he assumed the risk in this case, under the weight of the proof in this case. That is the way it looks to me, but that is not a matter for me to determine."

And in overruling the motion for new trial he thus expressed himself:

"In my opinion the weight of the evidence shows such a state of facts as makes the risk of injury to the plaintiff from the slag between the tracks of substantially the size and character as the piece on which he struck, one which the plaintiff assumed."

When he acted on the motion, his conception of the law had changed from that expressed in his charge to the jury as above quoted. His then conception he thus expressed:

"I do not think that the knowledge of danger of a certain kind and degree can be said, as matter of law, to involve the assumption of a similar kind materially greater in degree."

It was with this view of the law that he thus held that the weight of the evidence favored the position that plaintiff had assumed the risk.

He was led to overrule the motion so far as the question as to plaintiff's being in the line of his duty when he was injured by the consideration that this was the second time a jury had found in his favor as to this; and, so far as the question of assumption of risk, largely by the consideration that the last was the first of the three trials at which defendant had urged this defense. At the other two it had contested plaintiff's claim that it had been negligent in relation to the slag. He stated, in his opinion overruling the motion, that on those trials there had been "great conflict in the evidence on the question as to the presence of loose slag in between the railway tracks in defendant's yard," and that "in neither of these trials was the defense of assump-

tion of risk relied on. In the present trial, however, the defendant, in effect, abandoned its effort to show reasonable diligence in furnishing a reasonably safe place and rested its main defense upon the proposition that the condition of the yard in regard to loose slag between the two tracks was so well known to plaintiff and so apparent that the risk thereof was assumed by him."

The defendant, no doubt, was led to pursue this course by the consideration that, though, by so doing, plaintiff would be enabled to shun Scylla, i. e., a failure to make out a case of negligence against defendant, he would fall into Charybdis, i. e., make such an obvious case thereof that it would be entitled to a peremptory instruction on the ground of assumed risk. Thus it was that it determined, like B'rer Rabbit, to "lay. low" and let plaintiff have his own way as to the material conditions of the portion of the yard at Oneida where he alighted, then and theretofore, helping out by cross-examination of plaintiff's witnesses as to this particular. It, perhaps, was in pursuance of this policy that it refrained from introducing witnesses whose depositions it had taken, possibly introduced on the former trials, one of whom, at least, was familiar with those conditions. And it must be said that apparently plaintiff did not come far short of thus putting himself out of court and, if the case had been submitted on his evidence, possibly he would have succeeded in so doing.

[1-5] We face then the question which this case presents for our determination, i. e., whether, as a matter of law, plaintiff had assumed the risk of the defendant's negligence, of which he complains. The meaning of this question is, not whether the weight of the evidence was to the effect that he had so done, but whether there was any substantial evidence to the effect that he had not. For, only in case there was no such evidence can it be said that as a matter of law he had; and in disposing of it we are conscious that we have to be on our guard in a certain particular.

In the case of Butler v. Frazee, 211 U. S. 459, 29 Sup. Ct. 136, 53 L. Ed. 281, Mr. Justice Moody noted the fact that modern thought is against the defense of assumption of risk, and stated that there was "a notorious unwillingness" on the part of juries "to apply the rule." The particular in which we feel that we should be on our guard is to see to it that there is no unwillingness on our part to enforce this rule, and that we are not to be led thereby into any insincere argumentation to deny defendant the benefit of it.

There are several propositions in this connection as to which there ought to be no controversy. Some of them favor plaintiff, and some defendant. It will help if we first dispose of them so that the single question on which the case hangs may be seen in all its nakedness. Those that favor defendant are these: It is trite that two things are essential to make' out the defense, to wit, knowledge of the defective condition out of which the risk arose, and appreciation of the risk arising therefrom. These two, indeed, may be reduced to one, i. e., knowledge of such condition and of such risk. In the case of Chicago & E. R. Co. v. Ponn, 191 Fed. 682, 112 C. C. A. 228, Judge Hollister said that the word appreciated "does not mean more than actual knowl-

edge. It does not mean less." Here, there can be no question that plaintiff appreciated, i. e., knew, the risk. The quotation heretofore made from his testimony contains an express admission that he did. The only possible question is whether he knew the conditions out of which the risk arose.

Again, it is not essential that plaintiff knew that the particular piece of slag, stepping on which caused his injury, was there. It is sufficient if he knew that such slag, i. e., slag of that character or slag substantially as large and as dangerous as that piece, were lying loose in and about the place where he alighted.

And again, his denial of such knowledge is not merely not conclusive of the question. It may be of no value whatever in determining it. Notwithstanding such denial, it may be that it should be taken that he did in fact have such knowledge.

In the case of Chesapeake & Ohio Ry. Co. v. Proffitt, 241 U. S. 462, 36 Sup. Ct. 620, 60 L. Ed. 1102, Mr. Justice Pitney said that the employé was "not to be treated as assuming a risk that is attributable to the employer's negligence until he becomes aware of it, or it is so plainly observable that he must be presumed to have known of it." Language to the same effect may be found in numerous decisions of the Supreme Court. Washington & G. R. R. Co. v. McDade, 135 U. S. 554, 573, 10 Sup. Ct. 1044, 34 L. Ed. 235; Choctaw O. & G. R. R. Co. v. McDade, 191 U. S. 64, 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Butler v. Frazee, 211 U. S. 459, 467, 29 Sup. Ct. 136, 53 L. Ed. 281; Schlemmer v. Buffalo R. & P. Co., 220 U. S. 590, 596, 31 Sup. Ct. 561, 55 L. Ed. 596; Texas & Pacific R. R. Co. v. Harvey, 228 U. S. 319, 321, 322, 33 Sup. Ct. 518, 57 L. Ed. 852; Gila Valley, G. & N. R. Co. v. Hall, 232 U. S. 94, 102, 34 Sup. Ct. 229, 58 L. Ed. 521; Seaboard Air Line R. R. Co. v. Horton, 233 U. S. 492, 504, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475.

The presumption here referred to, I take it, is conclusive. It cannot be overthrown or affected to any extent by a mere denial on the part of the employé. In Butler v. Frazee, supra, a peremptory instruction was upheld in face of a denial by the plaintiff, whose hand had been injured, whilst feeding a mangle in a steam laundry. The denial there, however, was of appreciation and not of knowledge of the condition out of which the risk arose; but, if such a denial was of no avail, a denial of such knowledge could not have been of any more value. Mr. Justice Moody said:

"The contention, however, is that, as the plaintiff testified in substance that she did not know and appreciate the danger which she was encountering, that testimony, with the other facts in the case, raised an issue for the jury, and that it could not be said, as a matter of law, that the risk had been assumed. This contention is sustained by a well-considered case. Stager v. Troy Laundry Co., 38 Or. 480 [63 Pac. 645, 53 L. R. A. 459]."

To this contention he responded:

"But where the conditions are constant and of long standing, and the danger is one that is suggested by the common knowledge which all possess, and both the conditions and the dangers are obvious to the common understanding, and the employé is of full age, intelligence, and adequate experience, and all

these elements of the problem appear without contradiction fom the plaintiff's own evidence, the question becomes one of law for the decision of the court."

The recent case of Jacobs v. Southern R. Co., 241 U. S. 229, 36 Sup. Ct. 588, 60 L. Ed. 970, which in some of its features is more like the one in hand than any other in the Supreme Court, also involved a denial of appreciation, i. e., knowledge of the risk. There the question of the assumption of risk was left to the jury, which found in defendant's favor. Seemingly, it was urged that because of this denial that question should not have been left to the jury. Scant consideration, however, was given to the denial. Mr. Justice Mc-Kenna said:

"He (i. e., the fireman who was injured whilst attempting to mount his engine when in motion from a cinder pile) admitted a knowledge of the 'material conditions,' and it would be going very far to say that a fireman of an engine who knew of the custom of depositing cinders between the tracks, knew of their existence, and who attempted to mount an engine with a vessel of water in his hands holding 'not over a gallon,' could be considered as not having appreciated the danger and assumed the risk of the situation because he had forgotten their existence at the time and did not notice them."

That this presumption is so strong indicates how "rigorous and vigorous" must be the circumstances which give rise to it. They may be thus put: The defective condition and the risk must have been so obvious and the employé's relation thereto must have been so close and intimate that he could not help but have known of them. This makes a denial by him of knowledge thereof in effect a denial of a physical fact. The case of Butler v. Frazee, supra, is an apt illustration of the circumstances under which the presumption arises. The defect in the mangle complained of consisted in the excessive height of the finger guard rail above the feed board. This was obvious to any one looking at it. The plaintiff's relation to the defective condition and the risk was as close and intimate as it could be. As she fed the mangle, it was right in front of her, and she had worked at it for some months before she was injured. This, of course, was a strong case for the presumption to arise. It was so strong that plaintiff did not deny that she knew of the defective condition. Conceivably cases may exist not so strong as this and yet strong enough to give rise to the presumption. But in one and all, in order thereto, the defective condition and the risk must have been so obvious and the employé's relation thereto must have been so close and intimate that he could not help but have known of them.

It must be taken, therefore, that plaintiff's denial of knowledge of the presence of slag such as that upon which he stepped was not only not conclusive as to his state of knowledge, but it may not have been sufficient to make the question in regard thereto one for the jury to determine. The circumstances may be so coercive that it must be conclusively presumed that he had knowledge thereof.

[6, 7] The propositions referred to favoring plaintiff are two. Knowledge on his part of the conditions out of which the risk which he incurred arose cannot be presumed from the fact that an ordinarily prudent person in like business, under like circumstances, would have

ascertained that condition either just before he jumped or theretofore. This fact made out a case of contributory negligence, not one of assumption of risk. That the two defenses are distinct is nowhere better settled than by the decisions of the Supreme Court of the United States. The matter is dealt with in the following cases: Choctaw, O. & G. R. Co. v. McDade, supra, 191 U. S. 68, 24 Sup. Ct. 24, 48 L. Ed. 96; Schlemmer v. Buffalo R. P. Co., supra, 220 U. S. 596, 31 Sup. Ct. 561, 55 L. Ed. 596; Seaboard A. L. R. R. Co. v. Horton, supra, 223 U. S. 503, 504, 34 Sup. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Yazoo & M. V. R. R. Co. v. Wright, 235 U. S. 379, 35 Sup. Ct. 130, 59 L. Ed. 277.

In the Schlemmer Case, Mr. Justice Day said that the distinction between the two defenses was "practical and clear," and, in the Horton Case, Mr. Justice Pitney said that it was "simple." This court, speaking through Judge Hollister, in the Ponn Case, 191 Fed. 687, 112 C. C. A. 228, said that they were "entirely distinct." The distinction was again noted by it in Sterling Paper Co. v. Hamel, 207 Fed. 300, 304, 125 C. C. A. 44, and Yazoo R. Co. v. Wright, 207 Fed. 281, 285, 125 C. C. A. 25. In the case of McMyler Mfg. Co. v. Mehnke, 209 Fed. 5, 126 C. C. A. 147, through Judge Denison, it said:

"When each, alike, constituted a complete defense, the distinction was largely academic, and it was natural that the terms should be used with some confusion; but, now that statutes have made differences in the defensive value of the two things, the distinction has become vital and has been the subject of much judicial inquiry."

He dealt therein with what he termed the "seeming conflict" between the statement of Mr. Justice Holmes in the first Schlemmer Case, 205 U. S. 1, 27 Sup. Ct. 407, 51 L. Ed. 681, that assumption of risk "obviously shades into negligence as commonly understood," and that "the difference between the two is one of degree rather than of kind," and that of Mr. Justice Day in the second one that "there is, nevertheless, a practical and clear distinction between the two."

Knowledge of the risk is the watchword of the defense of assumption of risk; want of due care in view thereof is that of contributory negligence; and these are distinct conceptions. Conceivably, at least, it is possible for an employé to have knowledge of a certain risk, when he enters the employment, and at the same time to exhibit a want of due care in entering it in view thereof. But it would seem that the decisions in the Schlemmer and Mehnke Cases are against treating such conduct as making out the defense of contributing negligence under a statute abolishing the defense of assumption of risk and not that of contributory negligence. It is only in case the employé, thereafter, in view of his knowledge of the risk, exhibits a want of due care in his behavior in relation thereto, that he has been guilty of such contributory negligence as to defeat the right of action. In such a case, assumption of risk and contributory negligence, but for a statute abolishing the one or limiting the effect of the other, coexist, each as a complete defense to the action. They need not, however, coexist. In the absence of statute, conceivably at least, there may be assumption of risk without contributory negligence. This is so, in case, at

the time the employé enters the employment, he knows of the risk, and with such knowledge a prudent person would encounter the risk of entering the employment. So there may be contributory negligence without assumption of risk. This is the case where the employé in the course of his employment, with no previous knowledge of the risk, is suddenly confronted therewith and has no freedom of choice between quitting and continuing in the service, but fails to exercise due care in view of the risk with which he is thus confronted. So if a prudent person, under the circumstances of the particular case, would have discovered the existence of the risk and acted accordingly, a case of contributory negligence would be made out, but not assumption of risk. This is so because knowledge of the risk is essential to the defense and this does not exist. All that exists is that the employé ought to have known.

In the case of Texas & Pacific R. R. Co. v. Archibald, 170 U. S. 665, 18 Sup. Ct. 777, 42 L. Ed. 1188, a switchman was injured whilst attempting to uncouple two cars delivered to defendant by another railroad company to be locally handled and then returned, by reason of the coupling apparatus being defective. The court held that defendant owed plaintiff the duty of exercising due care to furnish him reasonably safe appliances in the way of coupling apparatus as to foreign cars delivered to it to be locally handled the same as in case they were delivered to be handled over its road. The defendant requested an instruction to the effect that, if plaintiff knew or by the exercise of ordinary care could have known that it was the custom of the defendant company not to inspect such cars, he assumed the risk of being injured by reason of the defects in such cars. The court struck out the words "or by the exercise of ordinary care could have known" and gave the instruction thus altered. The action in so striking was approved. In the case of Choctaw, O. & G. R. Co. v. McDade, supra, the jury were instructed that if the deceased employé either knew of the danger of collision with the water spout, or, by the observance of ordinary care upon his part, ought to have known of it, no recovery could be had. Mr. Justice Day, as to this portion of the charge, said:

"The charge of the court upon the assumption of risk was more favorable to the plaintiff in error than the law required, as it exonerated the railroad company from fault if, in the exercise of ordinary care, McDade might have discovered the danger. Upon this question the true test is not in the exercise of care to discover dangers, but whether the defect is known or plainly observable by the employé."

[8, 9] The other proposition favoring plaintiff is that it does not follow from the fact that the plaintiff knew that pieces of slag of the size of a hen's egg and smaller were between the tracks in the yard at Oneida north of the road crossing and that it was dangerous for him to step on one of them in alighting from the train as he did, so that if he had been injured by stepping on such a piece he could not have recovered because he had assumed such risk, that he had assumed the risk of stepping on a loose piece of the character of that on which he did step. It seems to have been the thought of that portion of the charge to the jury as to what was essential to make out the defense

of assumption of risk heretofore quoted that it did so follow. Possibly there is no room to claim that a piece the size of a man's two fists or of a cocoanut is not substantialy larger and more dangerous to step on under such circumstances than one only as large as a hen's egg. At least, it cannot, as a matter of law, be said that such is not the case. This being so, we must take it that it is substantially larger and more dangerous. And such being the case, it is not to be said that an employé who assumes a particular risk assumes a substantially greater one because it is exactly of the same kind, and that, even though such particular risk is an "extraordinary" one, in that it arises from the employer's negligence, as is the case with the substantially greater one. Conceivably he might be willing to incur the one and not the other. Such fact cannot be made the basis of charging plaintiff with having assumed such risk on the ground that it was inferable from the presence of the smaller pieces that there might be larger ones or even that it was probable or likely there would be. The knowledge of conditions from which a risk arises which the doctrine calls for, as we understand it, is immediate knowledge obtained from pure observation. It does not cover conclusions or inferences from such knowledge. Probably it would be safer to say that it does not cover inferences or conclusions therefrom as to possible, or probable or likely conditions. In the Penn Case, 191 Fed. 688, 112 C. C. A. 228, Judge Hollister said:

"The only kind of knowledge which, on the ground of assumption of risk, will bar a recovery is actual knowledge."

And in the Wright and Hamel Cases, 207 Fed. 285, 125 C. C. A. 25, and 207 Fed. 304, 125 C. C. A. 44, Judge Warrington characterized the assumption called for by the defense of assumption of risk as a "conscious assumption"; and in order to be conscious assumption there must be actual knowledge. In the case of Chesapeake & Ohio Ry. Co. v. Deatley, 241 U. S. 310, 36 Sup. Ct. 564, 60 L. Ed. 1016, the plaintiff, a head brakeman, had been injured whilst attempting to mount, at the engine, a freight train in motion. By direction of the engineer he had dismounted at a coal dock, at which the train had stopped, and gone forward to a signal tower a short distance ahead, for information. The attempt to mount was from the platform of the tower as the engine passed him. His employment required him to mount a moving train on proper occasions, and he had frequently mounted his train, whilst in motion, on such an occasion as this one. The mounting could be made with reasonable safety if the train was running at a moderate rate of speed. There was some risk in so mounting, but it was one of the ordinary risks of the employment, in that it did not arise from negligence of the defendant or its engineer. And this risk the plaintiff had assumed. The train in question was running at the rate of 12 miles an hour, and the claim was that this was an unusually dangerous rate of speed at which to mount the train, and that therefore the engineer was negligent in running it at that rate, which made the risk of mounting the train whilst it was so running an extraordinary risk. The principal question in the case was, accepting this to be true: Did the plaintiff assume the risk of such

negligence on the part of the engineer? Possibly the case did not involve the doctrine of assumption of risk at all, in that plaintiff, when suddenly confronted with the increased risk, had no such freedom of choice, as to whether he would continue in or leave defendant's service, as is essential to call for the application of the doctrine, and therefore involved only the question of contributory negligence. But the case was disposed of on the basis that it did, and it was held that plaintiff did not, as a matter of law, assume such risk. It was so held because, the plaintiff not having admitted that he knew and appreciated the increased risk, it could not, as a matter of law, be said that he did; and this though there was no denial on his part that he did. The extraordinary risk which plaintiff thus encountered was exactly the same kind as the ordinary one which he had assumed. It was merely greater in degree. It was a risk which the engineer might easily create, and it was to be inferred that it was possible or even probable or likely that plaintiff would have to encounter it. This, however, was without effect. Mr. Justice Pitney stated defendant's position thus:

"It is insisted that the true test is, not whether the employé did, in fact, know the speed of the train and appreciated the danger, but whether he ought to have known and comprehended; whether, in effect, he ought to have anticipated and taken precautions to discover the danger."

To this he responded:

"This is inconsistent with the rule repeatedly laid down and uniformly adhered to by this court. According to our decisions, the settled rule is, not that it is the duty of an employé to exercise care to discover extraordinary dangers that may arise from the negligence of the employer or of those for whose conduct the employer is responsible, but that the employé may assume that the employer or his agents have exercised proper care with respect to his safety until notified to the contrary, unless the want of care and the danger arising from it are so obvious that an ordinarily careful person, under the circumstances, would observe and appreciate them."

But it may be urged that the smaller risk, to wit, that of running at such a moderate rate of speed that the train could be mounted with reasonable safety and, which was assumed, was an ordinary risk, in that it involved no negligence and the plaintiff had the right to presume that he would be subjected to no greater risk by running the train at a greater rate, whereas here the smaller risk, to wit, the presence, at the alighting place, of pieces of slag the size of a hen's egg and smaller, was in itself an extraordinary risk, in that it involved negligence. They were dangerous to step on. Brakemen were known to alight at that place in the line of their duties. The pieces could have been removed and reasonably should. Thus knowing that defendant was negligent to this extent, plaintiff not only had no right to presume that it had not been also negligent in permitting larger and more dangerous pieces to be there, but reasonably should have inferred that it might have or probably or likely had been and if he was not willing to incur the risk should have quit the employment. In the case of Texas & Pacific R. R. Co. v. Archibald, supra, though the only question directly involved was whether the words as to ordinary care were properly stricken out of the instruction requested by the

defendant, it was held that the jury should not have been instructed that, if plaintiff knew of the custom not to inspect and repair foreign cars handled locally, he had assumed the risk of injury by the defective coupling apparatus which he encountered, as it was in the instruction in its altered form. It was negligence on defendant's part not so to do, and it was inferable therefrom that the coupling apparatus of cars so received by it possibly might, even probably or likely would be, defective, and yet plaintiff was not held to have assumed the risk of the presence of such defective apparatus because he knew of such negligence.

A conclusive reason why the employé should not be chargeable with knowledge of defective conditions the possibility, probability, or likelihood of the existence of which is inferable from known conditions, is that the only basis for charging him with such knowledge is that an ordinarily prudent employé under like circumstances would draw such inference and act accordingly; and, as we have seen, the question of care on the employé's part has nothing whatever to do with the defense of assumption of risk. It has solely to do with that of contributory negligence.

[10] We come then to the narrow question on which the right of the defendant to the peremptory instruction hangs. It is whether there was substantial evidence that plaintiff did not know that slag, of the same character as that on which he stepped, i. e., substantially as large and as dangerous, lay between the two tracks in the yard at Oneida north of the road crossing. Here we are confronted at the outset with plaintiff's denial of such knowledge. This of itself was substantial evidence—evidence sufficient to carry the question to the jury—in the absence of a presumption of knowledge, i. e., of the existence of such slag at that place having been so obvious, and plaintiff's relation thereto having been so close and intimate that he could not help but know thereof. We shift then from this denial to consider whether the facts of this case were such as to give rise to such presumption.

The basis of the presumption contains two elements: The obviousness of such slag of that character as was there, and the closeness and intimacy of plaintiff's relation thereto. It is clear that it was obvious that such slag of that character as was there was there. It lay on the ground out in the open. There was no obstruction preventing any one, looking at it and close enough, from seeing it. To such a one it was plainly observable in the daytime. The more there was of it and the longer it had been there, the less close and intimate need plaintiff's relation have been to it in order for him to have known of it. Hence the importance of the question as to the quantity thereof and its duration there. Plaintiff introduced four witnesses besides himself whose testimony had bearing on these two matters; the defendant two, the testimony of one of whom was in line with that of plaintiff's four. The testimony of each of these five witnesses need not be set forth here. The effect thereof will be combined into a single statement.

The defendant ballasted its railroad from Oakdale, Tenn., to Somerset, Ky., which included the yard at Oneida with furnace slag

in the fall of 1907—four years before the accident—and it had not placed any new slag thereon since. South of the road crossing in front of the passenger depot the tracks and the space between them had been covered with small screenings. In the yard north of the road crossing between the two tracks there was a great deal of loose slag. In the distance of 90 feet from the road crossing it would take a man a day to pick up and remove it. The pieces in size ranged from the size of the exhibit down to that of a man's fist or a hen's egg and smaller. There is no statement as to the number of pieces the size of Exhibit No. 1 that were there, but the testimony tended to show that they were numerous, were everywhere, and had been there since this portion of the road was so ballasted.

Then, as to the closeness and intimacy of plaintiff's relation thereto, he testified that he passed Oneida several times a week, as much at nighttime as in the day, or practically every day or night ever since the road had been ballasted; that in alighting from the train as he did at the time of the accident he did as he "usually" did; and he had inspected trains at that point in a similar way "at many other times." His testimony as to this was somewhat corroborated by witnesses testifying in his behalf. Of course, the closeness and intimacy of his relation to such slag was affected by the consideration that in so alighting it was in the performance of the duty of inspecting the train as it passed him and absorption in that duty would draw his attention more or less from the slag; but according to his admission, it had not done so sufficiently to prevent his taking notice that there was slag there as large as a hen's egg and smaller.

If then, this had been all the evidence bearing on these two elements of the basis of the presumption in question, it would be hard to resist the conclusion that the presence of pieces of loose slag substantially as large and as dangerous as Exhibit No. 1 at that place was so obvious and his relation thereto was so close and intimate that he could not have helped but know thereof, and that therefore he must be presumed to have known of it, against which presumption his denial was of no avail. Such, however, was not all the evidence bearing on these matters. In upholding its meritorious defense that plaintiff alighted not in the line of his duty but to get a bottle of beer, defendant introduced strong testimony to the effect that plaintiff was not in the habit of alighting there for the purpose of inspection. The tendency of this testimony was, not merely that he had not alighted for such purpose on the occasion in question, but also that his testimony as to the extent to which he had theretofore alighted was an exaggeration. In view thereof, the conclusion could have been drawn that plaintiff, theretofore, had alighted only occasionally, and that therefore his relation to such pieces of slag was not so close and intimate as appeared from his own testimony. If, then, plaintiff had only so alighted occasionally, and when he did alight he was absorbed in the performance of his duties, is it to be said, even though such pieces of slag were as numerous and had been there as long as the testimony referred to tended to establish, that plaintiff could not help but have detected their presence? We seriously doubt it. But

this still is not all the evidence bearing on the question in hand. The defendant did not adhere to its tactics of "laying low" and let the plaintiff have his way as to the condition of the slag, helping out by cross-examination of his witnesses to magnify such condition. The other witness introduced by it on that subject, referred to above, gave testimony tending to show that the condition was not as bad as it would otherwise appear to have been. He testified that he passed through the yard at Oneida every day, that it "seemed to be in good condition," that it was "well cared for, seemed to be kept up and clean all the time," that he did not "remember seeing prior to the accident a piece of slag as big as your two hands lying between the tracks at or near where Thompson was injured," and that he had observed "George McDaniels (whose deposition had been taken by defendant and was not read), who was track walker at that time, * * * frequently with a wheelbarrow clean up stuff in the yard * * * that he didn't want left in the yard." The rules of the company read in evidence by plaintiff to prove negligence required that the yard should be kept clean of such slag. In addition, plaintiff's denial that he had theretofore seen such slag in the yard was some evidence as to the extent of such slag therein and how long it had been there.

In view then of this conflict in the evidence as to both elements of the basis of the presumption, it cannot be said that a case of presumptive knowledge was made out against which plaintiff's denial of knowledge was of no avail. The fact that the conflict is made out by defendant availing itself of plaintiff's evidence and plaintiff of defendant's makes no difference.

We conclude, therefore, that the court did not err in overruling defendant's motion for a peremptory instruction at the close of all the evidence.

[11] The other error assigned was the refusal to give a certain instruction requested by defendant. It is in these words:

"If the jury should find that plaintiff, while riding along there preparing to alight, could have seen the piece of slag complained of before he jumped off the engine, then they should find that it was of such nature as to be open and obvious and that he assumed the risk."

In view of the preceding discussion, it is hardly necessary to say much in support of the position that defendant was not entitled to this instruction. It is sufficient to say that it places the defense on a wrong basis. The sole basis thereof is knowledge of the risk at the time of entering into the employment or obtained subsequently under such circumstances that there is freedom of choice as to remaining in the employment before incurring it. What the employé could have known does not enter into it. That has to do with the defense of contributory negligence, and the two defenses should never be confused.

We are constrained, therefore, to affirm the judgment below.

DENISON, Circuit Judge. I concur. The criteria which should govern a jury in determining whether there has been assumption of

risk, as distinguished from contributory negligence, are clearly stated in the opinion; but what we said in McMyler Mfg. Co. v. Mehnke, 209 Fed. 5, 126 C. C. A. 147, seems to call for some comment. We there assumed that there were cases in which the two things coexisted or overlapped, and in which it would be difficult definitely to characterize the plaintiff's act. This difficulty does exist, but is—at least usually—one of fact and not of law. The shading of one into the other, and the difference which is of degree rather than of kind, to which Mr. Justice Holmes refers in the first Schlemmer Case, 205 U. S., at page 12, 27 Sup. Ct. 407, 51 L. Ed. 681, pertain to those varying inferences which may be drawn from the same evidential facts. It may well be said that the notice of danger which a prudent plaintiff should have taken, and the knowledge of that danger which the actual plaintiff must have had, are things which shade into each other and are different in degree, but not in kind. Indeed, the jury will have practical difficulty in distinguishing between that danger which was merely so apparent that every reasonably prudent man would observe it, and that danger which was so obvious that the plaintiff could not help but know it; yet the knowledge which plaintiff should have had and the actual knowledge to be imputed to him are distinct—at least in theory—and the authoritative cases cited in the opinion must be accepted as establishing this distinction.

In the McMyler Case, it was suggested that an assumption of risk which did not involve negligence might, by increase of risk, develop into negligence, and a similar relation is suggested in Seaboard v. Horton, 239 U. S. 595, 601, 36 Sup. Ct. 180, 60 L. Ed. 458. It would seem that in the more typical case negligence would develop, by knowledge, into assumption. In that event, would the negligence disappear, or would it persist and continue to invoke its due results? This query does not breed so much trouble in the present case, where a finding that actual knowledge had supervened upon the mere duty to know could well raise the statutory bar, as it would under a statute like that involved in the McMyler Case, where, although the greater would include the less, the less would bar the action and the greater would not—so far as the words of the statute go.

From another aspect of the present case confusion (probably as affecting the fact inference to be drawn) may appear. If plaintiff knew of the existence of the stone, or others like it, yet he also knew that there were places where he could safely step. He picked out such a place and intended to step upon it, but then carelessly neglected to do so; he negligently stepped into a place which he knew was unsafe. If the other elements of assumption existed, might there not be difficulty in stating or applying—or both—the proper formula of distinction?

However this may be, and if indeed there may be cases seemingly within the twilight zone, where no satisfactory and intelligible rule of distinction can be stated, I am content to think that when Congress by this statute greatly broadened plaintiff's right to recover, preserving only one bar out of the three existing, the defendant must

bring its case clearly within the bar so preserved; and that plaintiff's conduct should not be treated as assumption of risk, and so be allowed to defeat the action, unless it can be clearly and distinctly so classified. As said in the McMyler Case, the statute cannot intend to preserve by one name that which it destroys under another.